MICHAEL HACKETT *et al.*

*v.*

MARY E. SMELSLEY.

1. INTOXICATING LIQUORS—*grounds of action for selling or giving away.* The act of 1872 in relation to intoxicating liquors gives a right of action to the wife for three separate descriptions of injury caused by the selling or giving away of intoxicating liquors to her husband—injury in person, or property, or means of support.

2. SAME—*evidence must be confined to the cause of injury stated in the declaration.* In an action by a widow of a deceased person against parties for selling the deceased intoxicating liquors, where the alleged injury is to the plaintiff's means of support, the evidence should be confined to such injury alone, and it is error to admit proof that the plaintiff was injured in person by the acts of her husband, while intoxicated, and the error will not be cured by an instruction that no damages should be awarded on account of such personal injuries.

3. Same—*the fact that others sold liquor to same person is not available in defense.* Under the peculiar provisions of the statute giving an action to the person injured, severally or jointly, against any person or persons who shall, by selling or giving away intoxicating liquors, cause intoxication, in whole or in part, it will not avail a defendant, when sued for such selling, to show that others sold the party liquor that may have contributed to his intoxication.

4. But where the proof shows, or tends to show, in a suit by a wife to recover damages for an injury to her means of support, caused by the selling of liquor to her husband, that she attended various places where liquor was sold, with her husband, and that he, at such places, drank intoxicating liquor with his wife, and with her approval and consent, which may have contributed to the injury complained of, it was *held*, error to instruct the jury that, if the husband drank liquor at other places than the defendants' saloons, such fact should not be considered in reduction or mitigation of damages.

5. Same—*mitigation of damages.* The fact that the wife accompanied her husband to various places and gatherings, and drank liquors with him, and that the husband kept liquors in his house, and drank the same at home, with the wife's knowledge and approval, and that all of such drinking, on the part of the husband, was with her knowledge and consent, is proper to be considered by the jury, on the question of damages, in a suit by the wife to recover for an injury caused to her means of support by the sale of liquor to her husband, especially as the statute allows exemplary damages in such an action. But such facts do not constitute a bar to the action.

6. Same—*evidence on question of damages explanatory of plaintiff's conduct.* In a suit by a wife to recover for an injury in her means of support, by the sale of liquor to her husband, and thereby causing his intoxication, where the defendants introduced evidence showing that she, during the period complained of, had accompanied her husband to various places and gatherings, where she drank with him, as bearing on the question of damages, it was *held*, proper to prove by the wife, in rebuttal, that her husband compelled her to attend at such times and places with him, and the circumstances, as explanatory of her conduct.

7. Same—*loss of means of support.* The husband being under a legal obligation to support his wife, whether she has means of her own or not, or whether she is able to earn a livelihood by her own means or labor, it can not be said that the reduction of his estate to insolvency, or impairing his ability to provide the support, by means of selling him intoxicating liquors, does not injure her in her means of support.

8. A wife's right of support is not limited to the bare necessaries of life, but embraces comforts suitable to her situation and her husband's condition in life, and the fact that she has independent means of her own,

or is ablebodied and can earn a livelihood, will not defeat her right of action against a person who sells intoxicating liquors to her husband, which causes, or contributes to produce, his death, and thus deprive her of her legal supporter.

9. SAME—*right to exemplary damages.* In a suit by a wife to recover for an injury to her means of support, caused by selling intoxicating liquor to her husband, if it appears that, in consequence of such wrongful act, she has sustained actual and real damages to her means of support, the jury may, in addition to the actual damages shown, give exemplary or vindictive damages, but the jury are not bound to award the latter kind of damages.

10. SAME—*injury to means of support of wife by the death of her husband.* Under the act of 1872, the widow of a deceased party may maintain an action to recover damages for an injury to her means of support, growing out of the death of her husband, when caused by the sale of intoxicating liquor to him, and the drinking of the same by him. The statute does not require that she should be a wife at the time of suing, but only at the time of the wrongful act, and her husband's death is a permanent injury to her means of support.

11. SAME—*liability of owners of building where liquor is sold, to exemplary damages.* The person or persons owning, renting, leasing or permitting the occupation of any building or premises, and having knowledge that intoxicating liquors are to be sold therein, or who, having leased the same for other purposes, shall knowingly permit therein the sale of any intoxicating liquors, that causes, in whole or in part, the intoxication of any person, are made, by the statute, severally or jointly liable with the person or persons selling or giving such liquors, for all damages sustained in consequence of such intoxication, and for exemplary damages. In this respect, there is no distinction made between the seller and the owner of the building; and the owner of the building is liable for both actual and exemplary damages, whether sued alone or jointly with the person selling.

12. SAME—*exemplary damages—right to.* Under the statute, the right of a wife to recover exemplary damages for injury to her means of support, by the sale of intoxicating liquor to her husband, is not limited to a case of furnishing him liquor after notice not to do so, or to the case of preventing one endeavoring to reform from habits of intemperance from doing so, by tempting or inducing him to drink intoxicating liquors.

13. SAME—*right to consider drinking at other places.* In a suit by a widow to recover damages for the sale of intoxicating liquor to her husband, and thereby depriving her of means of support, and causing his death, the defendants asked the court to instruct the jury that if they believed, from the evidence, that the husband, prior to his death, and during the time complained of, drank intoxicating liquors at beer-gardens,

halls and picnics, and at his own house, as well as in the places of busi-
ness of the defendants, the jury might take the fact of such drinking into
consideration in determining the extent to which the drinking by the
husband in the places of business of the defendants contributed to the
alleged diminution of the plaintiff's means of support: *Held*, no error to
refuse the same. Had it been limited to drinking by the deceased hus-
band at his own house, or to drinking with the plaintiff's knowledge and
approval, it might have been proper.

14. DEATH—*action for causing by wrongful act, etc.* Under the act of
1853, giving an action in favor of the personal representative against any
one causing death of the intestate by wrongful act, etc., no action will lie
unless the deceased could have recovered for the wrongful act in case
death had not ensued; therefore, the personal representative of one whose
death was caused by intoxication can not maintain an action against the
persons wrongfully selling him the liquor which produced his intoxica-
tion.

APPEAL from the Circuit Court of Moultrie county; the
Hon. C. B. SMITH, Judge, presiding.

This was an action on the case, brought by Mary E. Smels-
ley, against Michael Hackett, James Keefe, Philip Reibsame,
John Selbach, Charles Weifel, Franz S. Batteiger and Andrew
Rothfres.

The plaintiff's declaration was, substantially, in the follow-
ing form:

For that, whereas, the plaintiff, before and on the 5th day
of July, A. D. 1872, was the wife of one George Smelsley,
and so continued to be until the time of his death, as herein-
after mentioned, to-wit: in the county of Macon, and State
of Illinois; and the said George Smelsley, on the day last
aforesaid, and for a long time next preceding that day, carried
on and exercised the trade and business of a boot and shoe-
maker, and dealer in boots and shoes, at, to-wit: the county
and State aforesaid, and derived therefrom a large yearly
income, to-wit: the sum of $2500, and was also possessed of
moneys and property amounting in value to a large sum of
money, to-wit: the sum of $2500, and, by means thereof, was
enabled to and did provide a comfortable and liberal mainten-
ance, as well for himself as for the plaintiff and for one John

Smelsley, then and still being the minor son of said George Smelsley and the plaintiff; and on, etc., and since, hitherto, at. etc., the said Michael Hackett and James Keefe, as partners in business, under the firm name of Hackett & Keefe, and such of the other defendants, to-wit: the said Reibsame, Selbach, Weifel, Batteiger and Rothfres. severally and respectively, were engaged in, and have carried on and exercised, the business of selling intoxicating liquors; and on, etc., and divers other days between that day and the death of the said George Smelsley, they, the said defendants, the said Hackett & Keefe, as partners as aforesaid, and the said other defendants doing business severally as aforesaid. did, severally and respectively, sell and give, in divers quantities and at various times, to him, the said George Smelsley, intoxicating liquors, and thereby, during a long space of time, to-wit: from the day aforesaid until the death of him, the said George Smelsley, caused him to become, and he, the said George Smelsley, was then habitually intoxicated; and so being habitually intoxicated. he, the said George Smelsley, during the time last aforesaid, then greatly wasted and squandered his moneys and property, and became and was greatly impoverished, reduced and degraded, in mind and body as well as in his estate, and, by reason of such intoxication. became and was wholly unfitted and disqualified for attending to and exercising his said trade and business, and greatly neglected and ceased to exercise or attend to the duties of his said trade and business, or any other calling or business whatsoever, whereby he might earn and provide a livelihood for plaintiff; and in further consequence of such habitual drunkenness and intoxication of him, the said George Smelsley, he being in a state of intoxication so caused by the defendants, and brought about as aforesaid, and, by means thereof, being in such mental condition as to be unable to perceive or apprehend danger from physical causes, on, to-wit: the 5th day of July, A. D. 1873, at, etc., drove a certain horse attached by means of certain harness to a certain buggy,

8—77TH ILL.

wherein he, the said Smelsley, then was, and then and there caused the said horse to go into a certain watercourse and stream, to-wit: the Sangamon river, the said stream then being greatly swollen and full of flood-water, and to draw into the said stream or river the said buggy wherein he, the said George Smelsley, then was; and the said stream being so swollen and full, he, the said George Smelsley, was washed out of the said buggy into the said stream, and, being unable to escape therefrom to the land, was then and there drowned, and did then and there, by means of his said intoxication, die in the waters of the said stream or river; by means of which said habitual intoxication, and in consequence thereof, plaintiff saith she hath been and is greatly injured in her means of support, and has sustained damage to the amount of $5000; and that, by force of the statute in such case made and provided, an action hath accrued to her for the recovery of her said damages in the premises, and, therefore, she brings her suit.

The venue of the cause was changed from Macon to Moultrie county.

The opinion of the court presents the facts necessary to an understanding of the points decided.

Messrs. CREA & EWING, for the appellants.

Messrs. NELSON & ROBY, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a suit, brought by appellee, the widow of George Smelsley, deceased, in the Macon circuit court, against appellants, seven in number, under the act of 1872, concerning the sale of intoxicating liquors, to recover damages for injury to her means of support.

The declaration, containing but one count, alleges that, prior to and on the 5th day of July, 1872, the deceased husband of appellee, George Smelsley, was a manufacturer of

and dealer in boots and shoes; that from the income of his business he supported his wife and only child comfortably; that defendants, who were saloon-keepers, on and after that day, and until the 5th day of July, 1873, sold to her said husband intoxicating liquors, and caused him to be habitually intoxicated; that, owing thereto, he wasted and squandered his substance, neglected his business and ceased to attend thereto, and became impoverished in means and degraded in body and mind; and that, while intoxicated, as the effect of intoxicating liquor sold to him by defendants, he recklessly drove a horse and buggy into the Sangamon river, and was drowned.

A verdict and judgment were rendered against all the defendants for $2800, and they appealed.

One error assigned is, that the court permitted improper evidence to go to the jury on behalf of the plaintiff.

The plaintiff testified in her own behalf; and. when on the stand, she was asked the following questions, and made the following answers—objections to the questions having first been made by the defendants, and the objections overruled by the court:

*Question*—What was his (George Smelsley's) conduct toward you in 1872 and 1873, when he came home, and how did he treat you?

*Answer*—I always had to keep the supper on the table until he came home; and then, if he got angry, he would throw the dishes out. I had to go out of the house into the cold, sometimes, in the winter, and could not go in until he went to sleep. Sometimes I had to go out of doors half dressed, and suffered from the cold. I was obliged to go out to escape injury from him.

*Question*—If he made any demonstrations towards you with a weapon, when he came home in that condition, state the fact—what he did.

*Answer*—Yes sir. he did, with a revolver. Once he took the revolver and held it to my head, as I had the child in my arms.

The statute gives the right of action for three separate descriptions of injury—injury in person, or property, or means of support.

As the declaration in this case counted only upon an injury in means of support, the evidence should have been confined to such injury, and it was error to admit this evidence of. personal injury and ill-treatment; and it was such evidence as was highly calculated to operate injuriously to the defendants.

It is said that it was admissible, as tending to prove the habitual intoxication alleged. but we do not consider it any proper evidence for such purpose. If the husband was intoxicated when at home, the witness could have stated that fact. There was no necessity of giving evidence of personal injury and ill-treatment to show the intoxication. It certainly should not be held admissible, at least unless there was some question made as to the fact of intoxication, or conflicting evidence respecting it. There was no question here as to such fact; or had there been objection to stating whether the husband was intoxicated, as being a conclusion, then evidence .of such facts from which the conclusion was drawn might have been admissible; but there was nothing of that kind.

It is contended that the error was cured by the following instruction, which was given to the jury at the instance of the plaintiff, among the other instructions in the case:

"The jury should not award any damages on the ground of injury to the person of plaintiff, or on the ground of her personal suffering from the conduct or deportment of her husband, but evidence tending to show the conduct of Smelsley towards his wife, at his home, or for 'any abuse to her, is only admitted to' show intoxication of George Smelsley, habitual or otherwise, and for no other purpose; and such evidence should only be considered by the jury in determining the question of intoxication, and should not be considered on the question of damages."

It is evident that the attempt to keep the jury within the limit of damages claimed in the declaration by that instruction, after such inflammatory evidence had been received as to another actionable injury not involved in the case, and after counsel for plaintiff had fully availed themselves of such evidence before the jury, to the prejudice of the defendants, would but partially counteract the injurious effect of the admission of such testimony.

This precise point was adjudged in the case of *L. B. and M. R. R. Co.* v. *Winslow et al.* 66 Ill. 220, where irrelevant evidence had been improperly admitted and fully availed of before the jury, and this court held that the error of the admission of the testimony was not sufficiently obviated by the giving of an instruction excluding such evidence altogether from the consideration of the jury. It is important, in cases of this character, that matter foreign to the issue, and calculated to operate prejudicially against the defendants, should not be brought into the case. Under the authority of the case cited, the error here was not removed by the instruction.

It is further assigned as error that the court erred in the giving and refusing of instructions.

The sixth instruction given for the plaintiff informed the jury that if they believed, from the evidence, that Smelsley drank intoxicating liquor at other places than the saloons of the defendants, within the time alleged in the declaration, such fact should not be considered by the jury, in reduction or mitigation of damages. This instruction, abstractly considered, and without reference to the peculiar facts in evidence, was justified, in view of the peculiar provisions of the statute, and by the ruling of this court in the case of *Emory* v. *Addis*, 71 Ill. ——. It was there said, in respect to this same point, in a similar case—

"It will avail appellant nothing that it is shown other persons sold Addis liquor that may have contributed to his intoxication. The statute has given an action to the party

injured, severally or jointly against any person or persons who shall, by selling or giving intoxicating liquors, have caused intoxication, in whole or in part, of such person or persons."

In the present case, the following instruction, number five, was given to the jury, on behalf of defendants :

" The jury are instructed that if they believe, from the evidence, that, in the years 1871, 1872 and 1873, the plaintiff visited public beer-gardens, club-rooms and halls, where numbers of persons were assembled together, and attended picnics, and that her husband accompanied her to said places, and at said places, or some of them, the plaintiff and her husband drank beer and wine together in the presence of the defendants, or some of them ; and if the jury further believe, from the evidence, that the husband of the plaintiff kept wine and beer in his house, and that the husband of the plaintiff, with the knowledge and approval of the plaintiff, drank such wine and beer at home, and that the plaintiff and others joined him in drinking such wine and beer ; and if the jury further believe, from the evidence, that all said drinking of wine and beer was done with the knowledge and approval of the plaintiff, then, and in such case, said facts, if proven, may be taken into consideration by the jury, together with all the other evidence in the case, in determining the damages of the plaintiff, if the jury believe, from the evidence, that the plaintiff is entitled to a verdict in this case."

As there was evidence in the case which this instruction was applicable to, there was an apparent want of harmony between it and the one given for plaintiff. The last one for defendants, we think, was properly given, especially as exemplary damages are allowable by the statute; and, in view of there being evidence in the case tending to prove the facts recited in that instruction, we are of opinion the one for the plaintiff should not have been given.

And here may be noticed another objection to the admission of testimony. After the defendants had introduced evidence in regard to the matters stated in the above instruction for defendants, plaintiff was recalled as a witness, and testified that she went to those places named because she was compelled to go; her husband said she should go; that the Germans were his customers, and he belonged to the society, and that the plaintiff was not considered sociable by them, anyhow. As evidence of this conduct of plaintiff was introduced by defendants to affect her claim for damages, we are of opinion this testimony, explanatory of such conduct, as to what induced it, was properly admitted, as going to show the nature and character of the conduct.

The instructions which were asked on behalf of the defendants, and were refused by the court, were the following:

"1. If the jury believe, from the evidence, that the plaintiff is a woman of sufficient means in her own right to maintain herself as comfortably as she was supported by her husband, about the 5th day of July, A. D. 1872, then, and in such case, the jury should find the defendants not guilty."

"5. The jury are instructed that, in this State, the husband is not legally bound to provide his wife, who is able and competent to obtain her own livelihood, with means of support; and unless the jury believe, from the evidence, that the defendants, by the sales of intoxicating liquor to George Smelsley, diminished means of support which the plaintiff had irrespective of her husband, the jury should find the defendants not guilty."

From the earliest period of the law, there has been a legal obligation on the husband to support his wife. No act of the legislature of this State, when this alleged cause of action accrued, had ever abrogated such law. It has never been annulled by judicial construction, nor do we recognize in courts the right so to annul it.

Where one is legally bound to furnish support to another, it can not be truly said that the reduction of the estate of the person so bound, to insolvency, or that the impairment or destroying of his ability to provide the support, does not injure such other in his or her means of support. A wife is being supported by her husband—is entitled to be so; that source of support is lost to her. She is thereby injured in means of support, she has lost part thereof, and has not the same and equal means of support *now,* that she had before the loss.

This right of support is not limited to the supplying of the bare necessaries of life, but embraces comforts, what is suitable to the wife's situation and the husband's condition in life. Because the wife may be ablebodied, and can earn a livelihood, it does not follow that she does not suffer injury in means of support by loss of her legal supporter. Nor does it so follow where she may have independent means of support of her own. There are always independent means of support. No one is absolutely dependent on another for support, for, where there is the absence of other means of support, it is provided by public authority. We are of opinion the instructions were rightly refused.

"2. The jury are instructed that, if they believe, from the evidence, that the plaintiff is entitled to recover actual damages in this case, then they can not, in addition to such damages, assess against the defendants exemplary damages as a punishment to the defendants."

This instruction was embraced in another one which had already been given for defendants, and the court was not required to repeat it; the one so given was as follows (all after the first sentence being a modification, added by the court, and excepted to by defendants):

"The plaintiff, if entitled to actual damages, is not entitled to vindictive damages as a punishment to the defendants, even

though the jury may believe, from the evidence, that the liquor sold or given to said Smelsley may have caused the death of said Smelsley.

"And the jury are further instructed, the law is, that vindictive damages can not be allowed as a punishment to the defendants; still, the statutes of this State expressly declare that, if the plaintiff has been injured in her means of support in the manner alleged in the declaration, and by the wrongful act of the defendants, and that, by reason of such wrongful acts, she has sustained actual and real damages to her means of support, that then the jury are permitted, under the statute, in addition to such actual damages (if any such are shown), to also give the plaintiff vindictive damages, if the jury shall believe, from all the circumstances, that the plaintiff ought to recover vindictive damages. But unless the plaintiff proves actual damages, then she can not recover at all for any kind of damages. But the jury are not bound to give the plaintiff vindictive damages. And if the jury believe, from the proof and all the circumstances, that the plaintiff ought not to have vindictive damages, then the jury should not award vindictive damages."

There is a difference between the two instructions, in the use of the words "vindictive damages," instead of "exemplary damages;" but they are convertible terms. meaning one and the same thing. The instruction, as modified by the court. is fully sustained by the case of *Schneider* v. *Hosier*, 21 Ohio St. 98.

"3. The jury are instructed, that the plaintiff can not recover in this suit for injury to her means of support growing out of the death of her husband, if entitled, under the evidence, to a verdict at all."

This instruction is attempted to be supported upon two grounds: 1st. That it could not have been in the contemplation of the legislature to give this action in a case

where death had resulted, because there was a remedy already provided by the previous statute of 1853 for the case where death was caused by a wrongful act of another; and that statute gave the action in the name of the personal representatives of the deceased person, the recovery to be for the benefit of the widow and next of kin. But that statute gives an action only where the wrongful act causing the death is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof. In this case, had not death ensued, Smelsley, the deceased husband, could not have maintained an action against defendants for selling him the liquor which, as alleged, produced the intoxication whereby he came to his death. 2d. It is said the statute gives the action to the *wife,* and not to a *widow,* and so contemplated the case where death had not resulted, and the husband was still living.

This is a construction too strict, and we do not see why, even in all literal strictness insisted upon, the present case is not embraced. The statute says, every wife, etc., who shall be injured in means of support, etc., shall have a right of action, etc. The plaintiff was a *wife* at the time the act of injury and its alleged cause occurred. The statute does not require that she should be a wife at the time of the bringing of the action. But this point was adjudged adversely to the instruction in *Emory* v. *Addis, supra.* That was a case of a like action by the widow, and it was there said: "The death of her husband is a permanent injury to her means of support. It amounts to a total deprivation, and the evidence would warrant a remunerative and substantial verdict." It was there assumed that the action by the widow lay; and see *Schneider* v. *Hosier, supra.* There was no error in refusing this instruction.

" 4. The jury are instructed that, unless they believe, from the evidence, that the defendants, or some of them, were the owners of the buildings, or some of them, in which the alleged

sales of intoxicating liquors were made to the said George Smelsley, and that such owner or owners of said buildings knowingly permitted intoxicating liquors to be sold in such buildings, then the jury can not assess against the defendants in this suit exemplary damages."

The fifth section of the act of 1872, in question, gives to the person "injured in person, property or means of support, by any intoxicated person, or in consequence of his intoxication, a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving intoxicating liquors, have caused the intoxication, in whole or in part, of such person or persons." This is the first clause, saying nothing as to damages. The second clause is: "And any person or persons owning, renting, leasing or permitting the occupation of any building or premises, and having knowledge that intoxicating liquors are to be sold therein, or who, having leased the same for other purposes, shall knowingly permit therein the sale of any intoxicating liquors that have caused, in whole or in part. the intoxication of any person, shall be liable, severally or jointly, with the person or persons selling or giving intoxicating liquors aforesaid, for all damages sustained, and for exemplary damages."

It must be admitted, the meaning of the statute in respect of exemplary damages is not so perspicuously expressed as it might have been. But, taking the two clauses together, we can not think it to be their true construction, that it was intended to draw a distinction between the seller, and the owner of the building, and subject them to a different measure of liability—the one for actual damages only, and the other for both actual and exemplary damages. The second clause, in express words, makes them liable, severally or jointly, for all damages sustained, and for exemplary damages. It certainly could not have been supposed that, in the joint action, there would be separate judgments rendered, against the one for the actual damages sustained, and against the other for actual and

also exemplary damages. This would be contrary to all legal rule. There is nothing indicative of the idea of a different degree of culpability between the two classes of persons, or that there should be a difference of recovery against them. The only liability for damages which is prescribed, is one for all damages sustained, and for exemplary damages; and that the owner of the building and the seller shall be severally or jointly liable therefor. In a joint suit against them, there may be a recovery against both, for actual and exemplary damages. In a several suit against either, we are of opinion there may be a recovery of both actual and exemplary damages.

"6. If the jury believe, from the evidence, that the plaintiff, in the years 1871, 1872 and 1873, visited public beer gardens, club rooms and halls, where numbers of persons assembled, and attended picnics with her husband, and that at said places the plaintiff and her husband drank beer and wine together in public, and in the presence, at some of said places, of the defendants, or some of them; and if the jury further believe, from the evidence, that the husband of the plaintiff kept wine and beer in his house, and that the husband of the plaintiff, with the knowledge and approval of the plaintiff, drank such wine and beer at home, and that the plaintiff and others joined the husband of the plaintiff in drinking such wine and beer; and if the jury further believe, from the evidence, that all said drinking by the husband of the plaintiff, and all the other beer and spirituous liquors stated by witnesses on the stand to have been drank by the husband of the plaintiff, was done and drank by him with the knowledge and approval of the plaintiff, then and in such case the jury should find the defendants not guilty."

We do not consider that the facts set out in this instruction would constitute a bar to the plaintiff's action, and are of opinion that the full benefit of all instruction on this head which defendants were entitled to, was granted to them in

the first above recited instruction, No. 5, given to the jury on behalf of defendants, which was, that such facts might be taken into consideration by the jury in determining the damages of the plaintiff, if the jury believed, from the evidence, that she was entitled to a verdict.

Another sufficient reason for refusing the instruction, was, that there was not evidence in the case to base it upon. There was no evidence that all the beer and spirituous liquors testified by witnesses as having been drunk by the husband, were so drunk with the knowledge and approval of the plaintiff.

"7. The jury are further instructed that, if they believe, from the evidence, that the plaintiff is entitled to recover actual damages in this case, yet the jury are not permitted to assess against the defendants, in addition thereto, exemplary damages. unless the jury further believe, from the evidence, that the said George Smelsley, during the period between the 5th day of July, A. D. 1872. and the 5th day of July, A. D. 1873, was a man in the habit of getting intoxicated, and that the plaintiff notified the defendants, or some of them, between said days, not to sell or give intoxicating liquors or drinks to said George Smelsley, and that the defendants, or some of them, after such notice, sold or gave intoxicating liquor or drinks to the said George Smelsley; or unless the jury believe, from the evidence, that the said George Smelsley, within said period, was in the habit of getting intoxicated, and that he was endeavoring to overcome such habit by total abstinence, and that this was known to the defendants, or some of them, or was suspected by them, or some of them, and that with such knowledge the defendants, or some of them, dissuaded or prevented the said Smelsley from carrying out his resolve to totally abstain from intoxicating drinks, by improper influences on the part of the defendants, or some of them, by their tempting or inducing said Smelsley to drink intoxicating liquors; or unless the jury believe, from the evidence, that

other aggravating circumstances have been shown against the defendants, or some of them."

Such a form of instruction is objectionable, as calculated to mislead a jury, and was properly refused. It was very well calculated to lead the jury to believe that there could be no recovery of exemplary damages except in the two cases specified, of furnishing liquor after notice not to do so, and preventing one, who was endeavoring to reform from the habit of intemperance, from doing so, by tempting or inducing him to drink intoxicating liquors.

The case of *Meidel* v. *Anthus*, 71 Ill. —, is referred to as authority for the instruction, but the court never sanctioned any such form of instruction as this. The court there referred to these two cases recited in this instruction as instances for exemplary damages, but not as embracing all the cases for exemplary damages, nor as sanctioning any such form of an instruction.

" 8.   If the jury believe, from the evidence, that George Smelsley, during the years 1871, 1872 and 1873, drank intoxicating liquors at beer gardens, halls and picnics, and at his own house, as well as in the places of business of the defendants, during the year immediately preceding his death, the jury may take such drinking of said Smelsley into consideration in determining the extent to which the drinking by him in the places of business of the defendants contributed to the alleged diminution of the means of support of the plaintiff."

This instruction has been sufficiently disposed of by the remarks already made upon the instruction given for the plaintiff, and the first one, No. 5, given for defendants. The present one differs from that one given for the defendants, in being disconnected, as to the liquor drank, with the knowledge and approval of the plaintiff; and, under the authority of the case of *Emory* v. *Addis, supra,* we think this instruction was properly refused. Had it been limited to the drink-

ing of intoxicating liquors at Smelsley's own house, it might have been proper.

For the errors which have been indicated, the judgment is reversed and the cause remanded.

*Judgment reversed.*