JAMES TRIGGS

*v.*

AGNES MCINTYRE *et al.*

*Opinion filed April 17, 1905—Rehearing denied June 7, 1905.*

1. DRAM-SHOPS—*cause of death a question of fact for the jury.* In an action under section 9 of the Dram-shop act the question whether the efficient cause of the death of plaintiff's intestate was his intoxication or an attack of third parties upon him is one of fact, under evidence that he was left by his companions in an intoxicated stupor in a shed, where his body was found the next day under circumstances tending to show death by suffocation or strangulation and that the body had been robbed.

2. SAME—*defendant is liable if liquor furnished by him caused intoxication in part.* Under section 9 of the Dram-shop act the liability of defendant for damages occasioned by his gift or sale of intoxicating liquor accrues whether the liquor so furnished caused the intoxication wholly or in part.

3. INSTRUCTIONS—*party desiring jury to be advised on certain point should request instruction.* In an action under section 9 of the Dram-shop act against the dram-shop keeper and the owner of the building, if one defendant desires the jury to be advised as to the form of their verdict in case they find one defendant not guilty he should request an instruction presenting the form of such verdict or he cannot complain of the omission.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Lake county; the Hon. C. H. DONNELLY, Judge, presiding.

215   21

This is an action of trespass on the case, brought by the widow and daughter of one John P. McIntyre, deceased, under section 9 of the Dram-shop act, the daughter, Agnes McIntyre, an infant, suing by her mother and next friend, Josephine McIntyre, and Josephine McIntyre in her own behalf, against Bernard H. Anderly and the appellant, James Triggs, as defendants. Pleas of the general issue were filed by the appellant, James Triggs, and by his co-defendant below, Bernard H. Anderly. The trial took place before the court and jury, and resulted in verdict and judgment in favor of the plaintiffs and against the defendants for the sum of $2500.00. Upon appeal to the Appellate Court this judgment was affirmed; and the present appeal is prosecuted from such judgment of affirmance.

The material facts, as stated by the Appellate Court in their opinion delivered upon the decision of this case, are as follows:

"The declaration in this case charges that appellant was the owner of a building wherein he permitted Bernard H. Anderly, who was also a defendant with appellant, to conduct a saloon for the sale of intoxicating liquors; that, while said Anderly so occupied the building of appellant, he sold and gave intoxicating liquors to John P. McIntyre, causing him to become intoxicated, in consequence of which he died, and that he left surviving him appellees, as his widow and child. * * * Appellant, one of the defendants, prosecutes this appeal. The evidence shows that the deceased, McIntyre, was between thirty-five and forty years of age, and at the time of his death was engaged as a tower-man at the crossing of the Elgin, Joliet and Eastern and St. Paul railways at Libertyville. On the evening of September 11, 1902, after deceased had his supper, he visited the saloon of Anderly in appellant's building, and while there took several drinks of whisky. There is some difference of opinion among the witnesses as to the extent he appeared to be intoxicated when he left the building some two hours later than

when he entered it, but that he was very much intoxicated we think there can be no doubt. Deceased left the saloon in company with the witness, Lightbody, who says he was much intoxicated, and that, when they had reached a place near a lumber yard, deceased stopped, lay down and went to sleep; that he tried to wake him, but failing to do so went back to the saloon to report his condition and inquire where McIntyre lived, as the witness did not know. Spellman, the bar-keeper went with Lightbody back to the place where he had left McIntyre, and found him lying there unconscious, but breathing regularly. This was about one-fifth of a mile from the hotel where the saloon was. While Lightbody and Spellman were debating what to do with McIntyre, a Mr. Galloway came along and the three together carried him into a lumber shed made of rough boards that was near by. Both Lightbody and Galloway testified that, when they placed McIntyre in the shed, he was breathing easy like one asleep. He was not seen or heard of again until the next afternoon when his dead body was found in the shed. His head was placed by the parties, who carried him into the shed the night before, on a six-inch tile that stood up above the surface of the ground about four inches. When found the next afternoon the body was lying partly on the stomach and left side, with the face inclined downward and towards the right. There was no money or valuables on his person and his pockets were turned inside out. His face was distorted, tongue slightly between his teeth, throat much swollen or enlarged and a broken place in the skin on the nose, also an indentation or bruise about the edge of the hair on the left side near the temple, and a cut in the skin above the forehead about the hair line from which no blood came. The same witness, who testified to these facts, further testified that there was no blood on the face, but a kind of bloody froth was being discharged from the nose, and 'that the larynx was loosened so that it could be moved from side to side quite a distance.' Two inquests and one autopsy were held,

and it was shown by the medical testimony and is not controverted, that the immediate cause of death was suffocation."

J. L. O'DONNELL, CHARLES WHITNEY, and PAUL MACGUFFIN, for appellant.

QUINN & QUINN, and E. WAYNE COLBY, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The main contention of appellant in this case is, that the death of McIntyre was due, not to intoxication, but to an assault upon him, made by some unknown person or persons. There is no positive evidence in the record that any assault was made upon the deceased. He had been drinking in the saloon, kept by Anderly in the appellant's building, on the evening of September 11, 1902, and left there in company with a man, named Lightbody. When he had proceeded to a certain distance, he fell down upon the sidewalk in a state of intoxication, and Lightbody, not being able to awaken him, went back to the saloon and procured the assistance of one Spellman, Anderly's bar-tender, to aid him in raising the deceased from the ground. While they were trying to lift him up, one Galloway came along and aided them, and they removed McIntyre to a lumber shed, and left him there to sleep off the effects of his intoxication. The only evidence, introduced or sought to be introduced on the part of appellant to show that an assault was made upon McIntyre, was the testimony of one Mary Mason, that she heard a scuffle and loud talking between ten and eleven o'clock on that evening on the sidewalk near the spot where McIntyre fell. She also testified, that there was a railroad camp southeast of the town at the time, and that a number of strange men from the camp were in the habit of passing up and down that street in the night time. This testimony of Mary Mason was heard subject to objection, and afterwards, on motion of appellees, was excluded by the court. It was not shown that

McIntyre was a party to this scuffle or loud talking, because, at the time when the occurrence related by the witness, Mary Mason, took place, McIntyre was lying upon the sidewalk in a state of stupor from intoxication and unable to engage in a scuffle or loud talking. Nor was it shown that any person from the railroad camp in question was a party to such scuffle or loud talking. It might have been inferred from the existence of the camp at the place in question, and from the noise made by the scuffle and loud talking, that these circumstances had something to do with the body of McIntyre lying upon the sidewalk, but it was purely a matter of inference. One of the complaints made by the appellant is that the testimony of Mary Mason was excluded. We agree with the Appellate Court upon this subject when it says in its opinion: "The greater portion of it was incompetent and irrelevant, and what little of it might have been competent was of a nature to be of no value whatever that we can see to appellant."

Whether or not, however, the death of the deceased was due to intoxication, or to an attack made upon him by third persons, was a question of fact to be determined by the jury. There was evidence, tending to show that there were some marks and bruises upon the face or body of McIntyre, but there was also as much testimony, tending to show that the same may have been caused by his fall upon the sidewalk, as that they were the result of any attack made upon him. It is stated by the witnesses on both sides, expert and otherwise, that his death was the result of suffocation or strangulation. There were, however, no marks of any kind upon his throat to show that he had been choked to death, and there was evidence tending to show that the suffocation may have been caused, not by external violence, but, as the Appellate Court say, "because of the deceased's inability to extricate himself from some position, in which his neck and body had become placed while he was in a stupor from intoxication." There was also evidence tending to show that the pockets of the

deceased were turned outward, and that a watch, which some of the testimony tends to show that he wore, was missing. But if his body was robbed, the evidence tends as well to show, that such robbery may have been committed after his death, or while he was in the stupor from intoxication, as that it was the result of an attack upon his person, which made him insensible.

In *Schroder v. Crawford,* 94 Ill. 357, the facts showed that an intoxicated person, in going to his home in the night, had to cross a railroad, and next morning was found on the track, killed by being run over by a train of cars; and it was there held that the intoxication was the proximate cause of his death, and that the party, furnishing him the liquor, and the owner of the premises, where the liquor was furnished to him, were liable to his widow under the statute for injury to her means of support; and in that case we said (p. 361): "It was not the intention that the intoxicating liquor alone, of itself, exclusive of other agency, should do the whole injury. That would fall quite short of the measure of remedy intended to be given. The statute was designed for a practical end, to give a substantial remedy, and should be allowed to have effect according to its natural and obvious meaning." In the *Schroder case* we also said: "It is said there was here an intervening agency which caused the death, to-wit: the train of cars; that that was the proximate cause, and the intoxication but the remote cause, and that the proximate cause only is to be looked to. So it might be said where one from intoxication lies down and becomes frozen to death, or falls into the fire and is burned to death, or is drowned by a freshet, as in *Hackett* v. *Smelsley,* 77 Ill. 109, that the intervening agency of frost, fire and the freshet occasioned the death and was the proximate cause, and thus no liability under this statute. This would be construing away the statute in defeat of its purpose." But it was a matter for the jury to determine from all the evidence in the case whether or not the death of McIntyre was due to intoxica-

tion as the proximate cause. The instructions submitted
that question to the jury. In the first instruction, given to
the jury by the court for the appellant, the jury were in-
structed as follows: "If you believe from the evidence that
John P. McIntyre came to his death by suffocation, and that
the cause of such suffocation is not shown by the evidence,
then you will find the defendants not guilty." In the second
instruction, given at the request of the appellant to the jury,
the court instructed the jury, as a matter of law, as follows:
"Even though you may believe from the evidence that the
deceased, John P. McIntyre, procured intoxicating liquor
from the defendant, Anderly, and that he became intoxicated
therefrom, still if you further believe from the facts and cir-
cumstances in evidence in this case that he came to his death
by reason of the willful or criminal act of some person or
persons unknown, which act was not provoked by said McIn-
tyre, and that such willful or criminal act, and not his intox-
ication, was the effective cause of his death, then you should
find the defendants not guilty." In another instruction,
given for the appellant at its request, the court told the jury:
"unless from a consideration of all the evidence it is shown
by a preponderance of all the evidence that the effective
cause of the death of John P. McIntyre was by reason of
drinking intoxicating liquor, your verdict should be not
guilty." Upon this question of fact the judgment of the
trial court and the judgment of the Appellate Court, affirm-
ing the same, are conclusive upon this court.

*Second*—In the argument, submitted by counsel for ap-
pellant, two instructions given by the court are complained
of. One of these was the first instruction, given in behalf
of the appellees, and it was conditioned upon the belief of the
jury from the evidence "that Bernard H. Anderly on Sep-
tember 11, 1902, by himself or his servant, in a certain build-
ing occupied by him, sold or gave to John P. McIntyre,
intoxicating liquors, which in whole *or in part* caused the in-
toxication, if any, of the said John P. McIntyre," etc. The

objection made to this instruction, as stated by counsel, is that it was calculated to lead the jury to believe that, if the defendants caused the intoxication "in part" of John P. McIntyre, they were liable. The instruction was not erroneous in the respect thus indicated, for the reason that section 9 of the Dram-shop act gives every husband, wife, child, parent, etc., "a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving intoxicating liquors, have caused the intoxication, in whole or *in part,* of such person or persons." The instruction, in using the words, "in part," merely follows the language of the statute itself.

*Third*—The other instruction complained of is that given by the court in regard to the form of the verdict. The jury were instructed that, if they found the defendants guilty, the form of their verdict might be, "We, the jury, find the defendants guilty and assess the plaintiffs' damages at ......
dollars;" and, in case they found the defendants not guilty, the form of their verdict should be, "We, the jury, find the defendants not guilty." It is said that the court committed error in not instructing the jury as to the form of their verdict in case they should find one of the defendants not guilty. The action might have been brought against Anderly, the saloon-keeper, separately, or against appellant, the owner of the building, separately; but, the action having been brought against them both, it is difficult to see how one could be guilty, unless both were guilty. The saloon-keeper is charged with liability because, by selling or giving intoxicating liquor he has caused the intoxication, in whole or in part, of an intoxicated person, and the owner of the building is charged with liability if he permitted the occupation of the building for dram-shop purposes, and knew, when he rented it, that intoxicating liquor was to be sold therein. The proof shows that the appellant rented the premises in question for dram-shop purposes, and permitted them to be occupied for such purposes, and well knew that intoxicating liquor was sold

therein. The guilt of the owner of the property was necessarily as great, or the same as that of the tenant, and hence, as both were defendants, both were necessarily guilty. If, however, appellant desired to have the court instruct the jury as to the form of the verdict they should render in case they should find one of the defendants not guilty, he should have asked an instruction of the court to that effect; but the court was not requested to give any such instruction.

*Fourth*—Some complaint is made in the brief of points made by counsel for appellant, but not in his argument elaborating such points, that the court erred in giving to the jury an instruction which referred to the amount claimed in the declaration. This instruction, taken in connection with all the other instructions, could have done the appellant no harm, because it requires the jury to determine the amount of the damages from the "evidence," and to determine the amount of such damages, which appellees had "sustained." It cannot be said, therefore, that the instruction left it to the discretion of the jury to impose whatever damages they might choose; and, in addition to this, the instruction in question referred the jury to the proper elements of damage, as they were required thereby to take into consideration the age of the deceased, his size, his state of health, his habits as to being industrious or otherwise, the wages he had been earning, the amount he contributed to the support, if any, of his wife and daughter, as well as his personal expenses; and from all these facts the jury were told to estimate and find the damages which the appellees may have sustained to their means of support by the death of their father and husband.

We find no such error in the record as will justify us in reversing this judgment. Accordingly, the judgment of the Appellate Court is affirmed.              *Judgment affirmed.*