**Shapleigh Hardware Company, Appellee, v. Enterprise Foundry Company, Appellant.**

P. K. JOHNSON, of Belleville, for appellant.

NAGEL, KIRBY, ORRICK & SHEPLEY, of St. Louis, Mo., and WARNOCK, WILLIAMSON & BURROUGHS, of Edwardsville, for appellee.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

This is an action at law by Shapleigh Hardware Company, a corporation engaged in the wholesale hardware business in St. Louis, Missouri, against Enterprise Foundry Company, a corporation, operating a foundry and stove plant in Belleville, Illinois. The pleadings under which the case was tried consisted of amended complaint, answer and reply, bill of particulars of plaintiff and a counterclaim of defendant and answer of the plaintiff thereto. A trial before the

court without a jury resulted in a finding of the issues for the plaintiff and judgment against the defendant for $11,632.32, and appeal therefrom was taken to this court.

Defendant for many years was engaged in the manufacture of stoves and stove parts in Belleville, Illinois, the stock being owned by A. O. Spoeneman and his brother and sister, A. O. Spoeneman owning 300 shares out of a total of 700 shares. Prior to 1926, the said Spoeneman had no interest in, or connection with the Belleville Stove and Range Company. During that year banking interests in Belleville, who were creditors of the Belleville Stove and Range Company, requested the said Spoeneman to make a survey of the condition of that company. He did so and found its losses heavy. In 1928 or 1929 he began to buy stock in the Belleville Stove and Range Company, and by the end of 1929 or 1930 had acquired the controlling interest in that company, having 504 shares out of a total of 1000.

In 1926, the Belleville Stove and Range Company closed its foundry and entered into a contract for a term of eight years with defendant, in which contract defendant agreed to make castings for the Belleville Stove and Range Company. In July, 1932, the Belleville Stove and Range Company was insolvent, and among others, was indebted to the defendant, to A. O. Spoeneman and William Lugge, all of which indebtedness was unsecured.

The company then made a written assignment to William Lugge, one of its stockholders, as trustee, of all of its personal property, not pledged in a deed of trust heretofore given, covering the real estate; which personal property consisted of bills receivable, manufactured merchandise, and merchandise in process of manufacture, raw materials, and other personal effects. By the terms of this assignment Lugge, as trustee, was given full authority to convert all of said property so assigned to him into money and apply the proceeds therefrom, to two banks who were creditors, and the

defendant company, and the surplus if any, was to be applied to the indebtedness of A. O. Spoeneman, H. E. Kaufman and William Lugge. The trustee thereupon took charge of all of this property so assigned to him and proceeded to sell same. After the execution of the assignment, he continued his office at the office of the Belleville Stove and Range Company, for only two or three months and then moved his office to the plant of the defendant, where he remained until the liquidation was completed.

In July, 1932, defendant acquired the trade name and good will of the Belleville Stove and Range Company. The trustee, Lugge, while liquidating and disposing of the trust property assigned to him did not operate the foundry or any plant of the Belleville Stove and Range Company, did not employ any labor, other than a stenographer, paid no wages, paid no bills or expenses of any kind and had no checking account. His salary and that of his stenographer were paid by the defendant, as were his office expenses. The evidence indicates that the property assigned to Lugge was disposed of and converted into cash in the following manner: when orders for stoves or stove parts were received by him for the Belleville Stove and Range Company such orders were turned over to and filled by the defendant, the defendant in so doing using such material as Lugge had on hand as trustee. Prior to August, 1933, invoices for these orders were sent to customers on invoice blanks of the Belleville Stove and Range Company, on each of which was written at the bottom in red ink: ''Make all checks payable to Enterprise Foundry Company; also send remittances to them at Belleville, Illinois.'' Invoices sent to plaintiff from September 1933, to the end of that year were on the same forms, except that the name ''Belleville Stove and Range Company'' had been scratched out and there had been printed over that name ''Stove Division, Enterprise Foundry Company.''

These preliminary facts outlining the relationship

of the Belleville Stove and Range Company, and the Enterprise Foundry Company, defendant, and those individuals interested in both companies, are given in detail, because of the theory of the plaintiff and the ultimate finding by the trial court that the defendant was the undisclosed principal of the Belleville Stove and Range Company in the contract made by the latter with the plaintiff, with which finding we are inclined to concur.

For many years prior to and including the year 1933, plaintiff had done business with the Belleville Stove and Range Company and from time to time placed with it orders for merchandise. It had been the custom of the Belleville Stove and Range Company to send to plaintiff and other of its customers, immediately after the first of the year, a price list containing a complete list of the articles it desired to sell and the prices for same, which were to remain in force during that year, unless notified to the contrary. This list, was mailed by Mr. Lugge, as trustee, to the plaintiff on February 25, 1933, in a letter to which he signed the name of the Belleville Stove and Range Compnay. Among those items listed was the stove involved in this case, priced at $5.65 plus $.25 for crating.

From time to time circulars received from the United States government about business, would be sent by Lugge to various firms and on August 25, 1933, he sent to plaintiff an invitation from the war department for bidding on furnishing 3,500 box-type stoves required, for use by the Civilian Conservation Corps. With the blanks Lugge inclosed a letter in the name of the Belleville Stove and Range Company requesting plaintiff to put in its bid and stating that the order would be taken care of promptly, if obtained, by plaintiff. This letter was received by George McNutt, assistant buyer of plaintiff, who immediately called Lugge on the telephone and was advised by him that they would be able to make delivery of the stoves in 30 days and at the

price, stating at that time that Mr. Spoeneman was sitting at his desk.

Following this conversation plaintiff, on August 28, 1933, submitted its bid to the United States government to furnish 3,500 stoves of the kind desired for the sum of $21,315 to be delivered F. O. B. Belleville, Illinois, within 30 days after receipt of notice of the award. On September 7, 1933, plaintiff received from the government a telegram advising that its offer to furnish the stoves had been accepted. Thereupon plaintiff entered into a written contract with the United States government, date of September 8, 1933, to furnish said stoves within 30 days from that date which contract provided for a penalty of $1 per stove for each day's delay in delivery after said 30-day period. This word was telephoned by plaintiff either to Mr. Lugge or Mr. Spoeneman and on September 8th, both of these men went to the office of plaintiff at St. Louis. There Mr. C. E. Gill who was the buyer for the plaintiff showed the telegram of award to Mr. Spoeneman and Mr. Spoeneman stated that he could not make delivery in 30 days on account of labor trouble, scarcity of material and other difficulties.

Mr. Spoeneman denied having been advised of the bid over the telephone and claimed that he did not know of the government's award to the plaintiff until he was shown the telegram in the plaintiff's office. Then followed some negotiations over the telephone and in person with Colonel Van Dyne of the quartermaster's department, attempting unsuccessfully to obtain an extension of time, in which to deliver the stoves in question.

During the course of these negotiations Mr. Spoeneman wrote a letter to Colonel Van Dyne, copy of which he sent to Gill, representing the plaintiff which letters were signed "Enterprise Foundry Company, A. E. Spoeneman" and "Belleville Stove and Range Company, Stove Division of the Enterprise Foundry

Company, A. E. Spoeneman.'' During this period of attempting to secure an extension of time, there seems to have been no question raised that there was no contract.

Defendant only performed its contract in part and only delivered to plaintiff 389 stoves. When it became apparent that defendant could not perform its contract, plaintiff went into the open market and bought the balance of the stoves contracted for 3,111 in number, from various manufacturers, at a price in excess of the contract price.

It is assigned as error, that the findings and judgment are erroneous for the reason that plaintiff entirely failed to prove an essential and material part of its amended complaint, namely, that a contract as alleged existed between plaintiff and defendant or between plaintiff and Belleville Stove and Range Company, and for the further reason that the defendant was not the undisclosed principal of Belleville Stove and Range Company and that the findings and judgment are therefore contrary to the evidence.

We believe that the evidence clearly shows a contract existing between the plaintiff and the defendant as an undisclosed principal acting by and through the Belleville Stove and Range Company, as its agent. This is shown by the conversation, letters and memoranda of the parties and from their acts and conduct as well. The trial court so found, and findings of the court in trials without a jury are entitled to the same weight as a jury's verdict and will not be set aside unless manifestly against the weight of the evidence. *Keefer Coal Co. v. United Electric Coal Cos.,* 291 Ill. App. 477, 486; *Broderick v. O'Leary,* 112 Ill. App. 658, 661; *Wood v. Price,* 46 Ill. 435.

Complaint is made that the court admitted improper testimony on behalf of plaintiff. It is sufficient to say the evidence claimed to have been erroneously admitted was not controlling in character, nor calculated to

influence the finding of the court. When this is the case the judgment will not be reversed because of the admission of improper testimony, and especially so when there is sufficient competent testimony to sustain the judgment. *Schroeder v. Harvey,* 75 Ill. 638; *Palmer v. Meriden Britannia Co.,* 188 Ill. 508; *Broderick v. O'Leary,* 112 Ill. App. 658, 661.

The calling of the witness, William Lugge for cross-examination under section 60 of the Civil Practice Act [Ill. Rev. Stat. 1939, ch. 110, § 184; Jones Ill. Stats. Ann. 104.060], and the overruling of the defendant's objection to his testimony is urged as error on the part of the trial court. The statute provides that the officers, directors and managing agents of any corporation may be examined as if under cross-examination at the instance of the adverse party. The witness was the secretary of the defendant company, and we hardly feel constrained to hold that it was improper cross-examination to interrogate him about the previous history of the Belleville Stove and Range Company, under the theory of the plaintiff that the defendant was the undisclosed principal of the Belleville Stove and Range Company, even if the witness was not an officer of the defendant company at that time. In no event could any harm have resulted from this preliminary examination, as the defendant afterwards called the same witness and substantially the same facts were developed then, as upon his previous examination.

For the reasons given above, the judgment of the lower court will be affirmed.

*Affirmed.*