Earle J. Klopp, Appellee, v. Benevolent Protective Order of Elks, Lodge No. 281, Appellant.

Gen. No. 9,255.

Opinion filed February 25, 1941.
Opinion modified and rehearing denied April 1, 1941.

Lord, Bissell & Kadyk, of Chicago, and Branson Wright and Thomas S. Weldon, both of Bloomington, for appellant; Gordon R. Close and Herbert C. Brook, both of Chicago, of counsel.

Stone & Taylor, of Bloomington, for appellee.

Mr. Justice Riess delivered the opinion of the court.

This appeal seeks to reverse a judgment in the sum of $2,500 entered by the circuit court of McLean county against the defendant appellant, Benevolent Protective Order of Elks, Lodge No. 281, a nonprofit corporation, in an action brought by the plaintiff, Earle J. Klopp, under the Dram Shop Act (sec. 135, ch. 43, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 68.042]) for damages arising out of injuries sustained by him.

The case was tried upon its merits by the court without a jury. No evidence was offered by the defendant. At the conclusion of the evidence, defendant moved to dismiss the suit, which motion was denied and the judgment was entered.

The defendant contends that the selling or giving of intoxicating liquor by defendant was not the proximate cause of the injury and damages complained of and that the evidence failed to establish due care on the part of the plaintiff.

The evidence offered by the plaintiff disclosed in substance that the defendant maintained club rooms at Bloomington, Illinois, which consisted principally of 2 rooms, the front or west room, in which there were dining tables, chairs and a small dance floor, and the main club room containing card tables, lounging chairs, radio and a bar. Food and liquor were served members on the premises, and all of the receipts derived therefrom, remaining after payment of expenses, were turned over to the treasurer to be used for various purposes of the Lodge.

On the evening of February 26, 1938, plaintiff, a member of the defendant Lodge, accompanied by his

wife and a friend, were at the club rooms. During the course of the evening, A. C. Bartlett, a member of the defendant Lodge, became intoxicated as a result of liquor served to him in the club rooms, and some time after two o'clock a.m. he engaged in an argument with the bartender. The bartender, steward and several members of the club forcibly put him out of the club rooms. He remained in the vestibule with the steward for 10 or 15 minutes, and asked to be permitted to get his hat and coat to go home. As he returned to the club rooms, he made an offensive remark to one of the members who was standing near the door. The member resented the remark and started toward him. This caused a general struggle along the wall of the main club room toward the bar. Plaintiff's wife, who was going towards the front room, was knocked down between the end of the bar and the entrance of the vestibule door. In the meantime, plaintiff came out of the washroom and was walking toward the front room. He saw his wife on the floor, and in attempting to go to her assistance, he was knocked or fell to the floor, and in some manner sustained a fracture of his leg. While they were lying on the floor, one Fred Callans ran from the front room and jumped on a pile of men, and the defendant claimed that the injuries suffered by the plaintiff were caused by the act of Fred Callans, although the plaintiff testified that he did not know for certain when he received the injuries. The statement that Callans was sober when he left his table in the adjoining room where he had been eating and drinking and joined in the general melee is a mere conclusion. Callans admitted that he had come from his place of employment as a barkeeper after one o'clock and drank three or four bottles of beer at the Elks' Club within the hour after his arrival. The hour was very late and drinking had been general among the patrons present. There is no evidence that plaintiff's injuries were inflicted by the person to whom Bartlett

addressed insulting language. It happened after the plaintiff had returned from the washroom and saw his wife on the floor, during the course of a second general fight that the plaintiff was injured. Defendant's bar-keepers and attendants were then undertaking to quell and evict Bartlett for a second time, and it was during this fight which had become a common brawl, spoken of by one of the witnesses as "disgusting," that Klopp, who was seeking to go to the aid of his wife, was injured. The defendant offered no evidence upon the trial of this cause, and the sole question presented by this record is whether or not the court erred in denying defendant's motion to find it not guilty at the close of all the evidence, and in entering judgment against the defendant and in favor of the plaintiff.

Defendant's theory is that the injuries suffered by the plaintiff "were not the result of the intoxication of any of the members of the Club, but of an independent intervening cause, which, according to defendant's theory, was a malicious assault by a non-intoxicated person." A fair reading of the abstract of testimony given by the various witnesses will not, however, bear out defendant's conclusions.

Some confusion has arisen as to what constitutes proximate cause in cases of this character. In the case of *Shugart v. Egan,* 83 Ill. 56, cited by appellant, a judgment for the plaintiff widow for injuries resulting from the killing of her husband by a third person was reversed in a majority opinion with two dissents. There, the deceased, while intoxicated, had insulted a third party who later stabbed and killed him away from the premises where the liquor was sold. Other cases are cited which we have carefully read and considered, but believe it would serve no useful purpose to discuss them, since the facts in each distinguish them from the case at bar.

We deem the language of the Supreme Court in *Triggs v. McIntyre,* 215 Ill. 369, 372, 74 N. E. 400, to

state the rule applicable to and controlling under the facts herein, and an answer to defendant's contention as to proof of proximate cause, *viz:* "In *Schroder v. Crawford,* 94 Ill. 357, the facts showed that an intoxicated person, in going to his home in the night, had to cross a railroad, and next morning was found on the track, killed by being run over by a train of cars; and it was there held that the intoxication was the proximate cause of his death, and that the party, furnishing him the liquor, and the owner of the premises, where the liquor was furnished to him, were liable to his widow under the statute for injury to her means of support; and in that case we said (p. 361): 'It was not the intention that the intoxicating liquor alone, of itself, exclusive of other agency, should do the whole injury. That would fall quite short of the measure of remedy intended to be given. The statute was designed for a practical end, to give a substantial remedy, and should be allowed to have effect according to its natural and obvious meaning.' In the *Schroder case* we also said: 'It is said there was here an intervening agency which caused the death, to-wit: the train of cars; that that was the proximate cause, and the intoxication but the remote cause, and that the proximate cause only is to be looked to. So it might be said where one from intoxication lies down and becomes frozen to death, or falls into the fire and is burned to death, or is drowned by a freshet, as in *Hackett v. Smelsley,* 77 Ill. 109, that the intervening agency of frost, fire and the freshet occasioned the death and was the proximate cause, and thus no liability under this statute. This would be construing away the statute in defeat of its purpose.' But it was a matter for the jury to determine from all the evidence in the case whether or not the death of McIntyre was due to intoxication as the proximate cause." As is aptly said in *Schroder v. Crawford, supra,* at page 360, "The action is not a common law action, depend-

ing for its maintenance upon common law principles, but it is a statutory remedy and lies as given by the statute. The statute giving the action is very broad in its terms . . . ."

In the instant case, defendants seek to single out the incident of certain insolent language used by Bartlett and also their construction of the subsequent action of Callans, both as disconnected from and independent of the whole of the evidence of what transpired, and conclude therefrom that the same constituted intervening agencies which "broke any possible causal relation between defendant's acts in selling liquor and plaintiff's injuries." We cannot thus entirely ignore the circumstances surrounding the first fight in which plaintiff's wrist was broken due to no apparent fault of his own, followed by the eviction of Bartlett and his return and the subsequent occurrences immediately transpiring wherein he was again more seriously injured, as detailed by numerous witnesses. The question of proximate cause under the evidence herein became one of fact to be determined, not alone from isolated circumstances, but from a fair and impartial consideration of the whole of the evidence. The same arguments were made in *Triggs v. McIntyre, supra,* and *Schroder v. Crawford, supra,* it being contended that the intoxication merely created the condition followed by an intervening proximate cause, but the court did not so hold.

The defendant served liquor to its members and guests until two o'clock in the morning on the occasion in question. One member was intoxicated. The uncontroverted facts show that Bartlett had been drinking since early evening; that the liquor he drank was purchased from the defendant and served on the defendant's premises; that he was intoxicated, noisy and quarrelsome; that he was abusive and profane and was ejected from the club rooms previous to the occurrence, and that the steward of the club remained

with him for a short time in the vestibule. The natural and logical sequence of the events resulted entirely from the drunkenness of Bartlett caused by liquor furnished him by the defendant, and was the natural and probable consequence of selling and giving him intoxicating liquor. It is common knowledge that drunken brawls result in places where liquor is sold and drunk, and such brawls are frequently, if not usually, preceded by insolent and quarrelsome language on the part of intoxicated persons. It is a frequent occurrence in our *nisi prius* courts that suits seeking recovery of damages under the Dram Shop Act arise wherein altercations so begun have ended in fights and resultant injuries to the person, property or means of support of some other person or persons. To hold that a sober person who happened to be in a position to be injured in consequence of a condition caused by a dispenser of liquor could not recover would defeat the purpose of the statute. While statutes which are penal in character are generally to be strictly construed, the prevailing view is that legislation supplying remedies for injuries or damages caused by intoxication is remedial in its character and should be so construed as to suppress the mischief involved and advance the remedy provided for in the statute. *Hyba v. C. A. Horneman, Inc.,* 302 Ill. App. 143, 146, 23 N. E. (2d) 564.

In the very recent case of *Haw v. 1933 Grill, Inc.,* 297 Ill. App. 37, 17 N. E. (2d) 70, decided under the present Dram Shop Act, it was contended, as herein, that the injuries suffered by plaintiff's husband were proximately caused by the intervening act of a third party, defendant's floor manager, in attempting to eject the intoxicated person from the Grill where he had become intoxicated and noisy. There we held that the defendant might reasonably have anticipated such a consequence as a result of the intoxication. The question of the proximate cause of any injury is ordi-

narily a question of fact for the jury. *Schulte v. Schleeper,* 210 Ill. 357, 71 N. E. 325.

Findings of the court in trials without a jury are entitled to the same weight as a jury verdict, and will not be set aside unless manifestly against the weight of the evidence. *Shapleigh Hardware Co. v. Enterprise Foundry Co.,* 305 Ill. App. 180, 27 N. E. (2d) 1012. Whether or not the plaintiff was in the exercise of due care for his own safety under the evidence herein was also a question of fact upon which we deem the trial court to have acted in accord with and not contrary to the manifest weight of the evidence.

We deem the contention of the defendant that it was a purely charitable organization and not liable to respond in damages for torts to be of no force and not applicable to the facts appearing herein. The intoxicating liquor was dispensed under a dramshop license and the net profits went into defendant's treasury. The statutory liability to respond in civil damages under section 135, *supra,* is incident to the business and is a risk that all persons must assume who engage therein. *Hyba v. C. A. Horneman, Inc., supra.* There is no inherent right to sell intoxicating liquors. It is a policy of the State to consider the right to such traffic as permissive only. *Great Atlantic & Pacific Tea Co. v. Mayor & Com'rs of City of Danville,* 367 Ill. 310, 11 N. E. (2d) 388. The regulation and control of the sale of intoxicating liquor by legislative enactments is a proper exercise of police power of the State binding upon all who engage in the traffic, and the validity of such legislation has been frequently upheld by the courts of review of this and other States. *People v. Smith,* 368 Ill. 328, *et seq.,* 14 N. E. (2d) 82. Under the facts in evidence, the defendant was bound by and subject to the provisions of the act.

The trial court, sitting as judge of the law and the facts, heard the evidence and deemed the material allegations of the complaint upon which issue was joined

by the defendant to have been proven. While we have not recited all the facts shown by the evidence, we have carefully considered the same and are of the opinion that the finding and judgment of the court was not contrary to the manifest weight of the evidence and that on the law and the facts herein, no reversible error appears in the record.

The judgment of the circuit court of McLean county will therefore be affirmed.

*Judgment affirmed.*