409 P.2d 121

Douglas L. ROBINSON and Nelda H. Robinson, Plaintiffs and Respondents,

v.

Paul Singleton HREINSON, Defendant and Appellant.

No. 10337.

Supreme Court of Utah.

Dec. 17, 1965.

L. E. Midgley, Salt Lake City, for dependent and appellant.

Heber Grant Ivins, American Fork, for plaintiffs and respondents.

CROCKETT, Justice:

Plaintiffs Robinson sue: on behalf of the wife Nelda, for personal injuries; on behalf of the husband Douglas, for the loss of her services; and for damage to his car. These losses resulted from an automobile accident which occurred on December 7, 1963 on U. S. 91 near Pleasant Grove, Utah when the defendant's car struck the rear of the Robinson car in which the plaintiff Nelda was a passenger.

At the time of trial liability of the defendant was admitted. Upon submission of the issues as to damages to a jury it rendered a verdict totalling $12,896.94, which we detail below. Defendant appeals.

The main ground relied upon by the defendant in seeking reversal is that the plaintiffs improperly injected into the trial the subject of insurance which prejudiced the jury and unduly enhanced the damages awarded.

The occurrence complained about was this: During her direct testimony Nelda referred to several persons who had helped in her household duties for several months during her disability after her injury, when the following occurred:

Q. Now, after Mrs. Hoops left, did you hire someone additional?

A. Well, we really didn't hire my sister-in-law, but she had quit her job at the time and was coming down about three times a week and helping us out, and she is still doing this. This is Joanne Robinson. And I told her that I would be glad to pay her, and she said that if we got enough and it would be—*if the insurance would pay for her wages, then she would accept payment. If not then she wouldn't,* because she was my sister-in-law and she wouldn't expect money.

Shortly thereafter, defendant's counsel indicated to the court that he would like to

make a motion. The judge and counsel repaired to the court's chambers where the defendant voiced his objection to the statement and moved for a mistrial, which after a discussion and consideration of the matter was denied.

Defendant argues the error of the trial court in this ruling and the dire and irreparable harm from raising the fearsome specter of "insurance" before the jury. He pleads his helplessness in the face of such a calamity; that he was unable to object or move to strike for fear of focusing attention upon and emphasizing the deplorable reference which would accomplish nothing except to compound the harm and make it the more impossible for the jury to disregard it. So he avers that he had no alternative other than "to suffer in silence."

We are not so callous as to be entirely without appreciation for the position of the defendant in such circumstances, though perhaps not quite so keenly affected as defense counsel, who quite generally seem to have highly developed sensibilities to the mention of the subject of insurance, in some instances entirely too much so, of which we think this is a good example. In our judgment there are some basic fallacies involved in assuming that any mention of insurance automatically results in such prejudice that a motion for a mistrial should invariably be granted.

The first is the assumption that the jurors are so unaware of the facts of life that they are oblivious to the subject of insurance unless someone mentions it. They should be given credit for being people of average intelligence and reasonably cognizant of the realities of existence. Among other things, they drive automobiles and are concerned with financial responsibility for accidents that may happen. Since 1951 we have had our financial responsibility act, the practical effect of which is that nearly all cars are covered by insurance and the popular belief seems to be that it is compulsory.[1]

In applying the law to the everyday affairs of life it is the duty of the courts to be as practical and realistic as possible and to keep abreast of changing times. For that reason, and because it has become the almost universal custom to carry insurance, they are not nearly so apprehensive that mention of this subject in the presence of the jury will be prejudicial as they formerly were.[2] We do not depart from our former

---

1. § 41–12–1 through 41–12–41, U.C.A. 1953.

2. To this effect see 8 Am.Jur.2d Automobiles and Highway Traffic, § 965, p. 511; and 4 A.L.R.2d 766 et seq. The latter annotation notes that in Texas without statutory authorization the insurer may now be joined as a party; and that Louisiana and Wisconsin have statutes expressly so permitting; in support of tendency generally toward disclosure of the truth in regard to insurance see Miller v. Harpster, Alaska, 392 P.2d 21; and Ash v. Farwell, U.S.D.C., (Kan.1965) 37 F.R.D. 553.

position: that the question of insurance is immaterial and should not be injected into the trial; and that it is the duty of both counsel and the court to guard against it.[3] However, the mere mention of the subject does not necessarily in all instances compel the conclusion that it so prejudices the jury that a fair trial cannot be carried out.

In the great mass of litigation over automobile accidents, which is the preponderant majority of cases handled in our courts, there have been innumerable adjudications on the issue here in question, reflecting almost every point of view,[4] including from our own court.[5] Distinctions of various kinds have been made, one of which is whether the mention of the subject of insurance was intentional or inadvertent. We agree that while in some cases this may be a proper factor to consider, it is also true that in some circumstances as much harm can be done by the latter as by the former. An examination of the best reasoned decisions will reveal that it is only one factor to be weighed in determining the real issue: that is, whether in the particular situation the utterance was so harmful that the party was deprived of a fair trial. This in turn depends on whether there is a reasonable likelihood that in the absence of the incident there would have been a substantially different result.

The second fallacy which seems implicit in defendant's position is the assumption that jurors are so lacking in integrity that when they suspect there is insurance they will violate their oaths and award excessive and unwarranted damages. We do not gainsay that in some instances jurors may have been more liberal in assessing damages when they were to be paid by insurance companies or corporations rather than by individuals. The complexities of human personalities are such that considerable variation is to be expected in any function dependent upon them. The use of a lay jury not only makes allowance for this, but part of its purpose is to take advantage of it. Inasmuch as it is an integral part of our system of justice, it is our duty to accept it as a sound and proper method of settling controversies. Adjudications upon the functioning of a jury cannot be based upon the assumption that jurors are dishonest or corrupt, nor that they are so frivolous or capricious that the use of an ill-advised word or phrase in their presence will render their whole performance unreliable. On the contrary the success and the merit of the system, which has so long stood the test

---

3. See Hill v. Cloward, 14 Utah 2d 55, 377 P.2d 186.

4. See annotation in 4 A.L.R.2d 761 et seq.

5. See Balle v. Smith, 81 Utah 179, 17 P. 2d 224; Reid v. Owens, 98 Utah 50, 93 P.2d 680, 126 A.L.R. 55; Saltas v. Affleck, 99 Utah 381, 105 P.2d 176; Gittens v. Lundberg, 3 Utah 2d 392, 284 P. 2d 1115; Ivie v. Richardson, 9 Utah 2d 5, 336 P.2d 781; Hill v. Cloward, 14 Utah 2d 55, 377 P.2d 186.

of time, is necessarily grounded upon what we believe to be the sound premise: that for the most part jurors take their responsibilities seriously; that they attempt to judge the rights of their fellow citizens fairly; and to appraise damages honestly.

We of course do not mean that the actions of a jury are sanctified beyond the possibility of error. They are necessarily and properly subject to the supervision and control of the trial court and to correction when the ends of justice so demand. This leads into the most important proposition bearing upon such situations as we here deal with: the advisability and indeed the necessity of enabling the trial judge to properly perform his function as the authority in charge of the trial by giving him a reasonable latitude of discretion in ruling on such matters.[6] Experience teaches that just as sure as human beings are involved, untoward happenings of various kinds will continue to occur during trials. It is the responsibility of the trial court to rule upon questions which arise concerning whether any such occurrence has prevented a party from having a fair trial; and to take whatever corrective measure he deems necessary, including the granting of a mistrial where that is required. Due to the fact that this is primarily his responsibility; and that he is in a position of advantage to observe the appearance, demeanor and reactions of all persons concerned, and the result which eventuates, his rulings on such matters should be looked upon with indulgence and should not be disturbed unless it clearly appears that he has abused his discretion.

Another aspect of the problem here under consideration, and which emphasizes the advisability of respecting the supervisory authority and discretion of the trial court, is the fact that to do otherwise would place it within the power of either counsel at practically any stage of the proceeding to wipe out whatever had thus far been done and render another trial necessary.

The damages awarded by the jury were as follows:

| To Nelda H. Robinson | |
| --- | --- |
| General Damages | $10,000.00 |
| Special Damages | 1,217.44 |
| Cost of household help | 679.50 |
| To Douglas L. Robinson | |
| Damages to automobile | 258.00 |
| For loss of consortium | 742.00 |
| Total damages | $12,896.94 |

If it were within the sphere of our concern we could admit to some mystification as to the precision in fixing some of the items of damage. But as we have heretofore pointed out, there are some matters

---

6. That trial judge has broad powers in managing trial see statements in Hanks v. Christensen, 11 Utah 2d 8, 11, 354 P.2d 564. See statement by Justice Wade as to our review of discretionary rulings of trial court in Wellman v. Noble, 12 Utah 2d 350, 366 P.2d 701.

with respect to which we defer to the native wisdom and practical experience of lay jurors.[7] It is significant that the defendant has not attacked the damages listed above specifically on the ground of excessiveness. In addition to the argument that they were influenced by the incident we have discussed above, he assigns one further major claim of error: the alleged improper admission of certain of the testimony of Dr. Wayne M. Hebertson, who attended plaintiff Nelda Robinson, as to medical treatment and operative procedures she may have to undergo in the future. The doctor stated that if this were done it would probably involve "a two-step operation with a spinal fusion in the lumbar region and a cervical disc extraction and interbody fusion in the neck area." He said this would be dependent upon her progress and the degree of recovery she made during the next 12 to 18 months. Defendant argues that this was "speculative and anticipatory and therefore not proper for the jury to consider."

 When one has been injured the healing process usually takes some time and there is often some uncertainty as to what the future may bring. There is thus a practical difficulty in assessing future damages. However, this should not entirely defeat a claim for compensation which is justly due, nor should the settlement have to abide indefinitely. Of course, no award of damages should be based on mere speculation or conjecture. There must be a firm foundation for any award by proof that is at least more probable than not that the damage will be suffered.[8] For this reason the jury should not be allowed to assess future damages on probability, but only such damages as it believes from the preponderance of the evidence the plaintiff will *with reasonable certainty* incur in the future.[9]

Upon our survey of the evidence here it appears that this was the actual effect of the doctor's testimony. Although the words probable and probability were used in connection with questioning him, Dr. Hebertson also testified:

Q. Do you have an opinion, Sir, as to *any reasonable degree of certainty whether surgery will be required* in the case of Mrs. Robinson?

A. I think it will if she is to expect improvement in her condition.

 The parties have had what they were entitled to: a full and fair opportunity to present their contentions and the evi-

---

7. See Paul v. Kirkendall, 1 Utah 2d 1, 261 P.2d 670.

8. As to probability see Alvarado v. Tucker, 2 Utah 2d 16, 268 P.2d 986.

9. See Shephard v. Smith, 198 Wash. 395, 88 P.2d 601; cf. also Picino v. Utah-Apex Min. Co., 52 Utah 338, 173 P. 900. See note to instruction forms No. 90.3 JIFU; and No. 171 BAJI.

.dence supporting them to the court and jury. When this has been done all presumptions are in favor of the validity of the verdict and judgment.[10] It is our opinion that the rulings here complained of fall well within the limits of the prerogative of the trial court and we are not persuaded that he abused his discretion. (All emphasis added.)

The judgment is affirmed. Costs to plaintiff (respondent).

WADE and CALLISTER, JJ., concur.

McDONOUGH, J., concurs in the result.

HENRIOD, C. J., does not participate herein.

10. · See statement in Hales v. Peterson, 11 Utah 2d 411, 360 P.2d 822; and Joseph v. W. H. Groves Latter-Day Saints Hospital, 10 Utah 2d 94, 348 P.2d 935.