Ernest R. **FEUERHERM**, Plaintiff and Appellee,

v.

Mabel M. **ERTELT**, as Special Administrator ad Litem for and on behalf of Norbert J. Ertelt, Deceased, d/b/a The Nu-Bar, Defendant and Appellant.

Civ. No. 9663.

Supreme Court of North Dakota.

Dec. 12, 1979.

Robert A. Feder, of Pancratz, Kruger, Wold, Yuill & Johnson, Fargo, for plaintiff and appellee.

Patrick S. O'Neil, Mandan, for defendant and appellant.

VANDE WALLE, Justice.

Mabel M. Ertelt, as special administrator ad litem for and on behalf of Norbert J. Ertelt, deceased, doing business as the Nu-Bar (hereinafter "Nu-Bar"), appeals from a final judgment entered by the Barnes County District Court in favor of Ernest R. Feuerherm on March 30, 1979. We affirm.

Feuerherm and Robert Gilbertson were involved in an altercation at Spike's Place, Inc., a bar in Valley City, North Dakota, on September 18, 1975, that rendered Feuerherm permanently and totally disabled from working at his trade of brick mason. Gilbertson had begun drinking at approximately 10 a. m. at Spike's and had continued to do substantial drinking at the Nu-Bar, as well as at Spike's. He became intoxicated at the Nu-Bar and left there shortly after 6 p. m. to go to Spike's. Soon thereafter the altercation took place.

Feuerherm and his wife, Carol, filed separate actions, each naming Spike's, the Nu-Bar, and Robert Gilbertson as defendants. Both complaints stated causes of action against the bars based upon alleged violations of Sections 5–01–06 and 5–01–09,[1] N.D.C.C.; an action against Spike's for negligence in allowing Gilbertson on the premises while he was in an intoxicated condition; and an action against Gilbertson for assault and battery. The complaints were later amended to drop the action against Gilbertson, and subsequently the district court granted the Feuerherms' motion dismissing the second cause of action against Spike's in both complaints. The two cases were consolidated for trial. Prior to the trial date, the remaining causes of action against Spike's were dismissed after a settlement was reached with the Feuerherms.

Trial began against the remaining defendant, Nu-Bar, solely upon the dram-shop action. At the beginning of the trial, the Nu-Bar moved to amend its answer to include the affirmative defenses of contributory negligence and assumption of risk. The motion was denied.

During the course of the trial, the Feuerherms called Margaret A. Pearson as an expert witness in the field of forensic chemistry to testify as to the probable alcohol content of Gilbertson's blood at the time of the altercation. The Nu-Bar objected to Pearson's testimony as lacking foundation, and moved to have it stricken. This motion was denied.

The jury returned a verdict in favor of Ernest Feuerherm in the amount of $77,000 and in favor of Carol Feuerherm in the amount of $8,000. Ernest Feuerherm obtained judgment against the Nu-Bar in the amount of $47,000 plus costs and interest, the court having subtracted the $30,000 previously received from Spike's. The Nu-Bar has appealed from the judgment rendered in favor of Ernest Feuerherm.

We consider the following issues in this appeal:

---

1. These statutes are sometimes referred to as the "Civil Damage Act" or "Dram Shop Act."

Section 5–01–06, N.D.C.C., provides:

"Every wife, child, parent, guardian, employer, or other person who shall be injured in person, property or means of support by any intoxicated person, or in consequence of intoxication, shall have a right of action against any person who shall have caused such intoxication by disposing, selling, bartering, or giving away alcoholic beverages contrary to statute for all damages sustained."

Section 5–01–09, N.D.C.C., provides:

"Any person delivering alcoholic beverages to a person under twenty-one years of age, an habitual drunkard, an incompetent, or an intoxicated person is guilty of a class A misdemeanor, subject to the provisions of sections 5–01–08, 5–01–08.1 and 5–01–08.2."

1. Does the North Dakota Comparative Negligence Law, Section 9–10–07, N.D.C.C., apply in a dram-shop action?

2. Should the Nu-Bar have been allowed to amend its answer on the day of trial or after the completion of the evidence to include contributory negligence and assumption of risk as a defense?

3. Did the district court commit substantial error in allowing the expert witness, Margaret A. Pearson, to testify as to the probable alcohol content of Robert Gilbertson's blood?

 The Nu-Bar contends that the North Dakota Comparative Negligence Law, Section 9–10–07, N.D.C.C.,[2] should apply to this action. In support of this contention, it has cited several cases, including the Wisconsin case of *Austin v. Ford Motor Co.,* 86 Wis.2d 628, 273 N.W.2d 233 (1979), for the proposition that contributory negligence is a defense in a strict liability action. We do not find this contention persuasive. *Austin* and the other cases cited were not dram-shop actions. An action brought under Section 5–01–06, N.D.C.C., is not a strict liability tort action. As this court stated in *Iszler v. Jorda,* 80 N.W.2d 665, 667 (N.D.1957):

> "The liability created by the Civil Damage Act has no relation to any common law liability, or to any theory of tort."

 This statute is sui generis. It creates an entirely new cause of action unrelated to and different from any other. *Iszler v. Jorda, supra.* By enacting this statute it was the intention of our Legislature to create liability in a class of cases where no liability existed under common law. This liability is imposed not upon finding fault in the sense of any wrongful intent or negligent conduct on the part of the defendant, but upon finding a violation of Section 5–01–09, N.D.C.C., which prohibits the sale of alcoholic beverages to an intoxicated person, among others. Because liability was imposed upon the Nu-Bar for violating Section 5–01–09, N.D.C.C., without regard to wrongful intent or negligent conduct on its part, there can be no defense based upon the alleged negligent conduct of the plaintiff, Ernest Feuerherm. We therefore hold that the North Dakota Comparative Negligence Law, Section 9–10–07, N.D.C.C., does not apply to actions brought under the Dram Shop Act. By so holding we are in accord with other jurisdictions that have held that contributory negligence, comparative negligence, or assumption of risk are not defenses to a dram-shop action. *Turk v. Long Branch Saloon, Inc.,* 280 Minn. 438, 159 N.W.2d 903 (1968); *Overocker v. Retoff,* 93 Ill.App.2d 11, 234 N.E.2d 820 (1968); *Genesee Merchants Bank & Trust Co. v. Bourrie,* 375 Mich. 383, 134 N.W.2d 713 (1965). We express no opinion as to whether or not such defenses would be available in actions not based upon the Dram Shop Act but which involve strict liability.[3]

 We next consider whether or not the district court erred in refusing to allow the Nu-Bar to amend its answer to include contributory negligence and assumption of risk

---

**2.** Section 9–10–07, N.D.C.C., provides:

"Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person recovering. The court may, and when requested by either party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence attrib-

utable to the person recovering. When there are two or more persons who are jointly liable, contributions to awards shall be in proportion to the percentage of negligence attributable to each; provided, however, that each shall remain jointly and severally liable for the whole award. Upon the request of any party, this section shall be read by the court to the jury and the attorneys representing the parties may comment to the jury regarding this section."

**3.** By holding that comparative negligence—and thus contributory negligence—is not applicable to a dram-shop action, we resolve that issue, which the court in *Wanna v. Miller,* 136 N.W.2d 563 (N.D.1965), an earlier dram-shop action, indicated it was not resolving.

as defenses. The Nu-Bar moved to amend its answer on the day of trial to include these defenses. The district court denied the motion because this is a dram-shop action. After completion of the evidence, the Nu-Bar, as permitted by North Dakota Rule of Civil Procedure 15(b), moved to amend its pleadings to conform to the evidence in the record, alleging that the plaintiff's own witnesses had established contributory negligence and assumption of risk on the part of Ernest Feuerherm. This motion was also denied by the district court on the ground that this is a dram-shop action.

We find no error in these denials by the district court. In light of our holding that comparative negligence is not a defense to a dram-shop action, it would have been error to allow these amendments.

It should also be noted that we no longer recognize the defenses of assumption of risk and contributory negligence. In *Wentz v. Deseth,* 221 N.W.2d 101 (N.D. 1974), this court pointed out that when our Legislature enacted Section 9–10–07, N.D. C.C., the Comparative Negligence Law, it also amended Section 9–10–06, N.D.C.C., which previously was the source of the assumption-of-risk doctrine in North Dakota:

"By the 1973 legislation, Section 9–10–06, N.D.C.C., was amended and re-enacted by omitting therefrom the exception reading 'except so far as the latter, willfully or by want of ordinary care, has brought the injury upon himself.' This is the language upon which assumption of risk was based. *Wheat v. Patterson,* supra [154 N.W.2d 367 (N.D.1967)]. Now that this language has been deleted from the statute, the affirmative defenses of assumption of risk and contributory negligence no longer are the law of North Dakota, and negligence cases now are governed by the doctrine of comparative negligence." 221 N.W.2d at 104–105.

Finally, we consider the Nu-Bar's contention that the district court erred in allowing the expert witness, Margaret A. Pearson, to testify as to the probable alcohol content of Robert Gilbertson's blood at the time of the altercation. The Nu-Bar alleges that an improper foundation had been laid for her testimony in that there must be some facts or knowledge in evidence upon which the expert can base an opinion.

Rules 703 and 705 of the North Dakota Rules of Evidence deal with the basis of expert opinion and the disclosure of the facts underlying that opinion. Rule 703 provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

Rule 705 provides:

"The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

The major effect of Rule 705, as noted in the Procedure Committee Notes to Rule 705, is to do away with the prior requirement under North Dakota law that an expert opinion be based upon facts in evidence or assumed to be true hypothetically,[4] although in the case at hand most of the facts upon which the expert based her opinion were in evidence. It is true that the evidence of the amount of alcohol in each drink, the proof of the liquor, and the exact number of drinks that Gilbertson had prior to the altercation was not conclusive. But there was evidence that Gilbertson had five or six drinks between 11 a. m. and 3 p. m. and eight or nine drinks between 4 and 5 p. m. Testimony was also given that Gilbertson had not eaten that day and weighed at least 200 pounds at the time.

4. See *Jore v. Saturday Night Club, Inc.,* 227 N.W.2d 889 (N.D.1975).

The Nu-Bar contends that allowing the expert witness to testify, basing her opinion upon unsupported representations and assumptions, was extremely prejudicial. We do not agree. The attorney for the Nu-Bar cross-examined the expert witness and elicited from her the admission that her opinion was based upon representations made by Feuerherm's attorney and the further admission that if these representations were wrong, substantial error could result. However, if the basis of the opinion is weak or nonexistent, this goes to the expert's credibility and not necessarily to the admissibility of the opinion evidence. *Minot Sand & Gravel Co. v. Hjelle*, 231 N.W.2d 716 (N.D.1975).

The district court in its instructions to the jury recognized that the weight and value of an expert's opinion relate directly to the facts upon which the expert relies for that opinion. It instructed:

"The opinions of an expert witness are based upon an assumed state of facts. While you need not accept such opinions, you should consider them and give them such weight as is reasonable in the light of all the circumstances. If the assumed facts have been proven by the greater weight of the evidence, you should give such opinions the weight you think they deserve. If the assumed facts have not been so proven, you must give such opinions no weight.

"In examining an expert witness, counsel may propound a type of question known in law as a hypothetical question. By such a question the witness is asked to assume to be true a hypothetical state of facts, and to give an opinion based on that assumption.

"In permitting such a question, the Court does not rule, and does not necessarily find even in its own mind, that all the assumed facts have been proved. It only determines that those assumed facts are within the probable or possible range of evidence.

"It is for you, the jury, to find from all the evidence whether or not the facts assumed in a hypothetical question have been proved, and if you should find that any assumption in such a question has not been proved, you are to determine the effect of that failure of proof on the value and weight of the expert opinion based on the assumption."

We do not find that the expert testimony of Margaret A. Pearson was prejudicial to the Nu-Bar. The jury was aware that if the representations were wrong, substantial error could result, and the jurors were instructed by the district court to give the expert's opinion such weight as was reasonable under the circumstances. All the procedural safeguards necessary to prevent undue prejudice were taken. We find no error in allowing the expert witness, Margaret A. Pearson, to testify.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and SAND, PAULSON and PEDERSON, JJ., concur.