Sidney REEVES, Plaintiff and Appellee,

v.

Mary GENTILE, dba Lighthouse Lounge, Defendant and Appellant.

No. 880492.

Supreme Court of Utah.

May 17, 1991.

Randall W. Richards, Darrell G. Renstrom, Ogden, for defendant and appellant.

Brian R. Florence, Ogden, for plaintiff and appellee.

HALL, Chief Justice:

Defendant Mary Gentile, dba Lighthouse Lounge, appeals from a jury verdict against her in the Second Judicial District Court, Weber County. The jury found that defendant was liable pursuant to Utah Code Ann. § 32A–14–1 (1986) ("the Dramshop Act") for injuries sustained by plaintiff when struck by a car driven by a patron of defendant's bar.

On September 22, 1987, Jeff Edwards began a drinking spree at Shear Brothers Tavern ("Shear Brothers") in Ogden, Utah, sometime between 1 and 2 p.m. While there, he and a friend consumed approximately two pitchers of beer.

After leaving Shear Brothers, Edwards proceeded to a fast food restaurant to get something to eat. Shortly thereafter, he went to the place of employment of Bret A. Trease and left a message for Trease to meet him at The Keg Lounge ("The Keg").

At approximately 3:40 p.m., Trease met Edwards at The Keg, where they consumed beer. Thereafter, Edwards followed Trease to a day-care center, where Trease left his car for his wife to use. Trease then entered Edwards' car, and they returned to The Keg. Trease testified at trial that he consumed between five and eight twelve-ounce cans during the second visit to The Keg. Edwards testified that after leaving The Keg at approximately 6:30 p.m., he did not remember anything else because of the quantity of beer he had consumed.

After leaving The Keg, Trease and Edwards decided to drive to Lighthouse Lounge ("the Lighthouse"). While en route to the Lighthouse, they met Mike Postel and Kerwin Ficklin, who agreed to meet them at the bar. Once at the Lighthouse, it is undisputed that Trease and Edwards were obviously under the influence of alcohol. Defendant claims that the bar refused to sell or serve any liquor to Trease and Edwards because of their condition and that the bartender was given explicit instructions to that effect. In addition, witnesses testified that at no time did they see the bartender serve or offer liquor to either Trease or Edwards.

The evidence is in dispute as to what happened at this point. The facts are vague, but apparently Ficklin ordered a pitcher of beer. Witnesses testified that all four men split the pitcher of beer and, at some point during the next three hours, beer glasses may have been furnished to the party of four, according to some witnesses, or taken from the bar without permission, according to others. In addition, Ficklin testified that the four consumed a second pitcher that was served by the bartender; however, it is unclear who ordered the beer. Ficklin further testified that when he and Postel left the Lighthouse, Trease and Edwards were still seated with beers in front of them. Witnesses testified that Trease and Edwards remained in the bar for about twenty minutes after Ficklin and Postel left.

Trease and Edwards left the Lighthouse at about 9:30 p.m. and drove to Peg's Lew Monico Tavern ("Peg's"). At Peg's, they consumed approximately five beers each and left at 10:30 p.m. Trease drove Edwards' mother's car because Edwards was apparently in worse condition.

At approximately 11 p.m., Trease struck two joggers, Sidney E. Reeves and Marcella Montgomery, while traveling east on 2550 North in North Ogden. Ms. Montgomery was killed, and plaintiff Sidney

Reeves was seriously injured. Following the incident, blood alcohol tests disclosed that Trease had a blood alcohol level of .18 and Edwards had a blood alcohol level of .30. In addition, some evidence was presented at trial that Reeves and Montgomery were jogging on the wrong side of the road, that they did not have illuminating clothes or accessories, and that they may have been jogging either on the edge of the paved roadway or on the dirt shoulder.

On January 6, 1988, Reeves filed this action against Trease, Edwards, the Lighthouse, Peg's, and others. Trial was held October 18–21, 1988, and resulted in a jury verdict for $75,000 against each of the taverns that were still involved in the trial, for a total of $225,000. On October 31, 1988, a hearing was held pursuant to defendant's motion for remittitur to limit the total liability of the taverns to $100,000 pursuant to Utah Code Ann. § 32A–14–1 (1986). The trial court denied the motion and allowed the $75,000 award against each defendant to stand.

Defendant presents four issues on appeal:
(1) whether there was sufficient evidence presented at trial for the jury to find by a preponderance of the evidence that defendant was liable under the Dramshop Act; (2) whether the Dramshop Act allows causes of action against each tavern owner individually or all tavern owners combined; (3) whether the trial court erred in failing to instruct the jury on contributory and comparative negligence; and (4) whether it was prejudicial for the trial court to permit plaintiff to introduce evidence of insurance settlements with Reeves on behalf of Trease and Edwards.

## I. SUFFICIENCY OF THE EVIDENCE

█ The first issue raised by defendant is that there was insufficient evidence for the jury to find that she was liable under the Dramshop Act. In order to find defendant liable, the jury was required to find the requisite elements of the cause of action pursuant to Utah Code Ann. § 32A–14–1(1) (Supp.1986) (current version

at Utah Code Ann. § 32A–14–101 (Supp. 1990), which states:

(1) Any person who directly gives, sells, or otherwise provides liquor, or at a location allowing consumption on the premises, any alcoholic beverage, to a person;

(a) who is under the age of 21 years or

(b) who is apparently under the influence of intoxicating alcoholic beverages or products or drugs or

(c) [who] the person furnishing the alcoholic beverage knew or should have known from the circumstances was under the influence of intoxicating alcoholic beverages or products or drugs or

(d) who is a known interdicted person, and by those actions causes the intoxication of that person, is liable for injuries in person, property, or means of support to any third person, or to the spouse, child, or parent of that third person, resulting from the intoxication. An employer is liable for the action of its employees in violation of this chapter.

Defendant claims that there was insufficient evidence for the jury to find that she "directly" gave, sold, or otherwise provided liquor to Trease and Edwards. Plaintiff, however, presented evidence that someone other than Ficklin or Postel ordered at least one of the pitchers of beer at the Lighthouse and that defendant may have provided beer glasses to Trease and Edwards.

The function of a jury is to act as reasonable persons in discerning the true state of the facts where factual disputes exist, to discern the credibility of witnesses, and to apply the law to the facts as instructed by the trial court in reaching a verdict. Jury verdicts are upheld

[i]f there is any substantial competent evidence upon which a jury acting fairly and reasonably could make the finding.... But if the finding is so plainly unreasonable as to convince the court that no jury acting fairly and reasonably could make the finding, it cannot be said

to be supported by substantial evidence.[1]

Although the evidence was in dispute as to who actually purchased the beer, it was undisputed that Trease and Edwards continued to consume beer purchased on the premises. Hence, it was not unreasonable for the jury to find by a preponderance of the evidence that Lighthouse provided beer to Trease and Edwards while they were in an intoxicated state.

## II. AMOUNT OF JUDGMENT

■ Defendant's second claim is that the trial court erred in granting an excessive judgment under the Dramshop Act. The interpretation of a statute is a question of law, and as such, when reviewing a trial court's statutory interpretation, we give no deference but review the interpretation for correctness.[2]

The Dramshop Act, Utah Code Ann. § 32A–14–1 (Supp.1986), provides:

(2) A person who suffers an injury under Subsection (1) has a cause of action against the person who provided the liquor or other alcoholic beverage in violation of Subsection (1).

. . . .

(4) The total amount of damages that may be awarded to any person pursuant to a cause of action under this chapter which arises after the effective date of this subsection is limited to $100,000 and the aggregate amount which may be awarded to all persons injured as a result of one occurrence is limited to $300,000.

■ The primary rule of statutory interpretation is to give effect to the intent of the legislature in light of the purpose the statute was meant to achieve.[3] The purpose of the Dramshop Act is to deter "any person" from causing the intoxication of another or from serving liquor to anyone whom the person knew or should have known to be intoxicated.

■ The language of the statute clearly indicates that the legislature intended a cause of action to be available against each person or entity which provided liquor to an intoxicated person or caused that person to become intoxicated.[4] In the instant case, Reeves had a cause of action against each of the establishments that served Trease and Edwards in their intoxicated condition. Therefore, the jury could award up to $100,000 liability against each of the tavern owners. Hence, the trial court did not err in letting the jury verdict stand against each of the tavern owners.

## III. COMPARATIVE NEGLIGENCE

Defendant's third claim is that the trial court erred by failing to instruct the jury with regard to contributory or comparative negligence. Defendant actually presents two issues regarding comparative negligence: first, the comparative negligence of the tavern owners and Trease and Edwards, and second, the comparative negligence of Reeves and Montgomery for jogging on the wrong side of the road.

### A. Comparative Negligence Among Defendants

■ Defendant first claims that the trial court should have submitted a jury instruction that would allow for apportioning fault among the various defendants. However, the strict liability imposed by the Dramshop Act is not based upon common law notions of negligence or fault. Defendant therefore cannot look to the fault of the other defendants as a protection or shield from liability.

1. *Seybold v. Union Pacific R.R.*, 121 Utah 61, 239 P.2d 174, 177 (1951), *quoted in Dairyland Ins. Co. v. Holder*, 641 P.2d 136, 138 (Utah 1982); *see also Penrod v. Carter*, 737 P.2d 199, 200 (Utah 1987) (per curiam); *Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985).

2. *See, e.g., Creer v. Valley Bank & Trust Co.*, 770 P.2d 113, 114 (Utah 1989); *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985); *Gonzales v. Morris*, 610 P.2d 1285, 1286 (Utah 1980).

3. *See, e.g., American Coal Co. v. Sandstrom*, 689 P.2d 1, 3 (Utah 1984); *Christensen v. Industrial Comm'n*, 642 P.2d 755, 756 (Utah 1982).

4. *See, e.g., Quatrano v. Marrocco*, 61 Ill.App.2d 1, 208 N.E.2d 632, 638 (1965); *Abram v. Bourrie*, 8 Mich.App. 184, 154 N.W.2d 20, 24 (1967); *Plante v. Johnson*, 152 Vt. 270, 565 A.2d 1346, 1348 (1989).

■ When a plaintiff brings a common law civil suit for personal injuries based upon negligence, he must prove four elements: (1) that the defendant owed him a duty, (2) that the defendant breached the duty, (3) that the breach of the duty was the proximate cause of the injury, and (4) that there was in fact injury or damages.[5] The first two elements constitute negligence. In order to prevail on the personal injury claim a plaintiff must then prove that the defendant's negligence was a cause of the injury and that the defendant's negligence was greater than the plaintiff's negligence.

The Dramshop Act, however, provides that the simple acts of serving, selling, or otherwise providing intoxicants renders the dramshop liable for injuries resulting from intoxication. Thus, the clear intent of the legislature was to compensate innocent third parties by making dramshop owners strictly liable without regard to the finding of fault, wrongful intent, or negligent conduct on their part. We therefore conclude that the doctrine of comparative negligence does not have application to dramshop defendants.[6] Thus, the trial court did not err in refusing to submit a jury instruction apportioning fault among the dramshop defendants.[7]

### B. Comparative Negligence of Reeves and Trease

■ Defendant's second claim, that the trial court should have instructed the jury to compare the negligence of Trease and Reeves, presents a much different conceptual issue of first impression in this court. Of the other jurisdictions that have addressed the issue, some have seen fit to apply principles of contributory and comparative negligence,[8] while others have declined to do so.[9] The divergent views taken by the various courts is primarily attributable to the differing interpretations of legislative intent in the enactment of dramshop statutes.[10] Indeed, the issue presented in this case is one of legislative intent, namely, whether the purpose of the dramshop statute is other than to compensate innocent persons.

The Utah dramshop statute was enacted in 1985.[11] The statute provides for a cause of action, not available at common law,

5. See, e.g., Williams v. Melby, 699 P.2d 723, 726 (Utah 1985).

6. Cf. Overocker v. Retoff, 93 Ill.App.2d 11, 234 N.E.2d 820, 825 (1968); Slager v. HWA Corp., 435 N.W.2d 349, 353–54 (Iowa 1989); Genesee Merchants Bank & Trust Co. v. Bourrie, 375 Mich. 383, 134 N.W.2d 713, 716 (1965); Turk v. Long Branch Saloon, Inc., 280 Minn. 438, 159 N.W.2d 903, 905–06 (1968); Aanenson v. Bastien, 438 N.W.2d 151, 153–54 (N.D.1989) (citing Feuerherm v. Ertelt, 286 N.W.2d 509, 511 (N.D. 1979)); Plante, 565 A.2d at 1348 (Vermont Dramshop is not based on negligence but rather strict liability). But see Weinheimer v. Hoffman, 97 A.D.2d 314, 470 N.Y.S.2d 804, 806 (1983).

7. We note that the issues of complicity and assumption of risk are not raised in this case.

8. See Hill v. Alexander, 321 Ill.App. 406, 53 N.E.2d 307, 314 (1944) (if injurious act is not caused by intoxication, then dramshop owner is not liable); Klopp v. Protective Order of Elks, 309 Ill.App. 145, 33 N.E.2d 161, 165 (1941) (whether plaintiff was exercising due care for his own safety was issue for jury); Heyler v. Dixon, 160 Mich.App. 130, 408 N.W.2d 121, 130–31 (1987) (plaintiff who knowingly rides with intoxicated person is comparatively negligent and award will be reduced by amount of negligence); Lyman v. Bavar Co., 136 Mich.App. 407, 356 N.W.2d 28, 30 (1984) (to extent that plaintiff's injuries were caused by his own negligence unrelated to bringing about intoxication, they were not caused by illegal sale of intoxicating liquor); Walz v. City of Hudson, 327 N.W.2d 120, 123 (S.D.1982) (defenses such as contributory negligence are available in dramshop cases when appropriate).

9. See Zucker v. Vogt, 329 F.2d 426, 429–30 (2d Cir.1964) (contributory negligence of third-party plaintiff is not good defense in dramshop action); Overocker v. Retoff, 93 Ill.App.2d 11, 234 N.E.2d 820, 825 (1968) (no comparative negligence available as defense where plaintiff sought to break up fight between intoxicated bar patrons); Kvanli v. Village of Watson, 272 Minn. 481, 139 N.W.2d 275, 278 (1965) (concurring negligence of third-party plaintiff would not bar recovery); Feuerherm v. Ertelt, 286 N.W.2d 509, 511 (N.D.1979) (because dramshop act is statutory, issues of negligence and wrongful intent are not involved).

10. See Slager v. HWA Corp., 435 N.W.2d 349, 352–53 (Iowa 1989).

11. 1985 Utah Laws ch. 175, § 1.

against purveyors of intoxicants to those who in turn cause injury. The statute makes no reference to the provisions of the Utah Comparative Negligence Statute, Utah Code Ann. §§ 78–27–37 to –49 (1987), in place since 1973,[12] the purpose of which is to abolish the harsh effects of contributory negligence as a complete bar to recovery and to substitute therefor a comparative negligence doctrine which limits recovery in proportion to the fault of the person seeking recovery. The two statutes are clearly compatible and consistent in content and application.

The dramshop statute imposes strict liability, the effect of which is to make it unnecessary to allege and prove negligence on the part of the dramshop. However, application of comparative negligence principles to the conduct of plaintiff and the intoxicated driver, Trease, in no way diminishes the strict liability imposed upon the dramshop defendants.

The very language of the dramshop statute which allows recovery for injuries "resulting from the intoxication" is cast in terms of tort theory which requires the fact finder to determine the issue of causation. Causation can only be determined by considering the negligence or fault of those involved in the incident. It is also of note that the statute contains no language which permits injured persons to recover regardless of their conduct. Thus, in con-

text and in operation, the dramshop statute is consistent with and, indeed, invites application of the doctrine of comparative negligence.[13] Also, the statute contains no language limiting or excluding application of the principles of comparative negligence. Likewise, the comparative negligence statute contains no language which precludes its application in dramshop cases.[14]

The fact that the dramshop statute is a strict liability statute does not preclude comparison of the negligence of the intoxicated person and of the person seeking recovery,[15] and indeed, it should not. To disallow a comparison of the negligence of the plaintiff and the intoxicated driver would result in unjust consequences. For example, had plaintiff's action against Trease been decided by the jury, the jury might reasonably have found plaintiff's negligence to be greater than that of Trease, thus barring recovery at all. Yet, on the same facts, plaintiff could recover damages in full from the dramshop defendant. Such would constitute absolute liability rather strict liability provided for by the statute and would subvert the intent and purpose of the comparative negligence statute.

Furthermore, comparative negligence principles have also been applied in other areas of strict tort liability.[16]

---

**12.** 1973 Utah Laws ch. 209, §§ 1–7.

**13.** Utah Code Ann. § 78–27–38 (1987) states:
The fault of a person seeking recovery shall not alone bar recovery by that person. He may recover from any defendant or group of defendants whose fault exceeds his own. However, no defendant is liable to any person seeking recovery for any amount in excess of the proportion of fault attributable to that defendant.

**14.** Utah Code Ann. § 78–27–40 (1987) states:
Subject to § 78–27–38, the maximum amount for which a defendant may be liable to any person seeking recovery is that percentage or proportion of the damages equivalent to the percentage or proportion of fault attributed to that defendant. No defendant is entitled to contribution from any other person.

**15.** *See Heyler v. Dixon,* 160 Mich.App. 130, 408 N.W.2d 121, 130–31 (1987) (plaintiff who know-

ingly rides with intoxicated person is comparatively negligent and award will be reduced by amount of negligence); *Lyman v. Bavar Co.,* 136 Mich.App. 407, 356 N.W.2d 28, 30 (1984) (to the extent that plaintiff's injuries were caused by his own negligence unrelated to bringing about intoxication, they were not caused by illegal sale of intoxicating liquor).

**16.** *See Mulherin v. Ingersoll–Rand Co.,* 628 P.2d 1301, 1302 (Utah 1981) (comparative principles may be applied in a claim based on strict liability); *Smith v. Goodyear Tire & Rubber Co.,* 600 F.Supp. 1561, 1568 (D.Vt.1985) (jury may consider evidence of plaintiff's negligence in assessing damages on strict liability claim); *Plante v. Johnson,* 152 Vt. 270, 565 A.2d 1346, 1348 (1989) (there is a split of authority on whether comparative negligence statutes apply in strict liability cases). *See generally* Annotation, *Application of Comparative Negligence Doctrine to Actions Based on Strict Liability in Tort,* 9 A.L.R.4th 633 (1981).

We therefore conclude that the doctrine of comparative negligence has application in a dramshop case as between the intoxicated person and the injured parties and thus the injured parties should not be allowed to recover regardless of their own conduct.

In the instant case, the trial court submitted special verdict forms with five questions for each defendant. The following questions required the jury to find each and every element of a violation of the Dramshop Act:

QUESTION NO. 1: Did Mary Gentile dba Lighthouse give, sell or otherwise provide an alcoholic beverage to Bret A. Trease?

ANSWER: Yes.

QUESTION NO. 2: Was the alcoholic beverage provided to Bret A. Trease by Mary Gentile dba Lighthouse at a time when he was apparently under the influence of alcohol or at a time when Mary Gentile dba Lighthouse knew or should have known from the circumstances that he was under the influence?

ANSWER: Yes.

QUESTION NO. 3: Did the actions of Mary Gentile dba Lighthouse cause Bret Trease to become intoxicated?

ANSWER: Yes.

QUESTION NO. 4: Did the injuries to the plaintiff result from Bret Trease's intoxication at Mary Gentile dba Lighthouse?

ANSWER: Yes.

Prior to the jury's receiving the special verdicts, the trial court instructed it on the obligation of pedestrians to walk facing traffic. Jury instruction No. 16 reads:

You are instructed that pursuant to Utah law regarding pedestrians, it says the following:

"Where neither a sidewalk [n]or a shoulder is available, a pedestrian walking along or upon a highway shall walk as near as practicable to an outside edge of the roadway, and if on a two-way roadway, shall walk only on the left side of the roadway." [17]

While the trial court was correct in refusing to instruct the jury concerning the comparative negligence of dramshop defendants, the trial court should have permitted the jury to compare the negligence of Reeves and Trease. Nevertheless, after being instructed as to the obligation of pedestrians, the jury answered "yes" to all of the special verdict questions. Because the jury answered yes to question No. 4, it necessarily found that the intoxication and corresponding negligence of Trease was also a proximate cause of the accident.

Notwithstanding the fact that instruction 16 permitted the jury to make some judgment as to the comparative negligence of Reeves and Trease, the dramshop defendants were entitled to an instruction that would have permitted the jury to specifically assess the percentage of negligence of Reeves and Trease which in turn would be reflected in the damages awarded.[18] Nevertheless, it was Gentile's burden to request the court to give the proper instruction and make a specific objection if the court refused to do so. Rule 51 of the Utah Rules of Civil Procedure states in pertinent part:

No party may assign as error the giving or the failure to give an instruction unless he objects thereto. In objecting to the giving of an instruction, a party must state distinctly the matter to which he objects and the grounds for his objection. Notwithstanding the foregoing requirement, the appellate court, in its discretion and in the interests of justice, may review the giving or failure to give an instruction.

Although the written jury instruction submitted by Gentile asked for a comparison of the negligence of all parties, Gentile took exception to the refusal of the court to

---

17. *See* Utah Code Ann. § 41–6–82(2)–(3) (1988).

18. Utah Code Ann. § 78–27–39 (1987) states:
The trial court may, and when requested by any party shall, direct the jury, if any, to find separate special verdicts determining the total amount of damages sustained and the percentage or proportion of fault attributable to each person seeking recovery and to each defendant.

give a requested instruction concerning the comparison of negligence between Reeves and Trease. The following colloquy took place on the record, in the judge's chambers:

MR. RENSTROM: You're ruling out apportioned negligence then?

THE COURT: I suppose the net effect is I'm not allowing you to compare the negligence of Reeves, Edwards, Trease, Lighthouse, Peg's.

MR. RENSTROM: But you are allowing contributory negligence?

THE COURT: I'm not instructing them on contributory negligence because I don't think—I don't think that's the issue. I think the issue is proximate cause.

. . . .

MR. RENSTROM: ... [I]f I could raise a couple of things for the record.

THE COURT: Go ahead.

MR. RENSTROM: We would take exception to the Court, in effect, not permitting a contributory negligence instruction, particularly—

THE COURT: Now, are you talking contributory or comparative?

MR. RENSTROM: No, I'm talking about contributory.

THE COURT: I think that was abolished by the comparative statute.

MR. RENSTROM: No, I don't—well, let me make my exception.

THE COURT: Okay.

MR. RENSTROM: Not—I take exception to the fact that there's no specific instruction as to contributory negligence relevant to the contribution the plaintiff may have made to his own injuries. I

further take exception to the failure of the Court giving an instruction apportioning the total negligence between the plaintiffs, the driver, the owner of the car and the three bars in question.

The fact that Gentile's original written instruction compared the negligence of all parties and that she did not have a written instruction specifically comparing the negligence of Reeves and Trease alone does not defeat Gentile's exception. Gentile did not waive any objection to the court's failure to give her requested instruction because once the trial court refused her instruction, the record indicates that she made an immediate, specific exception to the trial court's refusal and stated specifically what she wanted from the court.[19]

The trial court improperly refused to submit defendant's requested instruction comparing the negligence of Reeves and Trease. Even though we conclude that the failure to instruct the jury concerning the comparative negligence between Trease and Reeves was reversible error, we also address the remaining issue because it may again arise on remand.[20]

## IV. EVIDENCE OF INSURANCE SETTLEMENTS

■ Defendant's final claim is that she was prejudiced when counsel for Reeves mentioned that both Trease's and Edwards' insurance companies had settled out of court. The reason for defendant's assertion of prejudice is that it is commonly believed that if a jury knows a defendant is covered by liability insurance, the jury may be more apt to find liability and award greater damages. Defendant asserts that

---

19. *See Hansen v. Stewart,* 761 P.2d 14, 16 (Utah 1988) (grounds for objections to jury instructions must be stated distinctly and specifically); *King v. Fereday,* 739 P.2d 618, 621 (Utah 1987) (rule 51 precludes a party from assigning as error the failure to give an instruction unless the party makes a timely objection); *Lamkin v. Lynch,* 600 P.2d 530, 532–33 (Utah 1979) (objection to jury instruction must be specific enough to give the trial court notice of every error in the instruction complained of on appeal); *Kesler v. Rogers,* 542 P.2d 354, 358 & n. 7 (Utah 1975) (when taking exception to the jury instructions, the challenging party must make a

clear and correct statement to the court as to what instruction is desired); *Fuller v. Zinik Sporting Goods Co.,* 538 P.2d 1036, 1037 (Utah 1975) (failure to request instruction leaves party in poor position to claim there was error in failing to give it).

20. *See* Utah R.App.P. 30(a); *Golding v. Ashley Central Irrigation Co.,* 793 P.2d 897, 900 (Utah 1990); *Hiltsley v. Ryder,* 738 P.2d 1024, 1026 (Utah 1987) (Zimmerman, J., concurring); *Anderson v. Utah County Bd. of County Comm'rs,* 589 P.2d 1214, 1216 (Utah 1979).

when the jury was told that Trease and Edwards were covered by insurance, it would assume that she was also covered.

In the instant case, the following colloquy took place during plaintiff's opening statement:

MR. FLORENCE: When this case was filed it was initiated primarily against Mr. Trease and Mr. Edwards, the two bars who are represented here today and the Keg Lounge. The lawsuit against Mr. Trease has been settled by reason of his insurance company paying their full proceeds—

MR. RENSTROM: Your Honor, at this point is when I'll take my exception.

THE COURT: Very well. Overruled.

MR. FLORENCE: May I proceed, your Honor?

THE COURT: Yes, you may.

MR. FLORENCE: His insurance company paying their full proceeds in a sum of $20,000 and Mr. Trease has agreed to pay an additional $5,000 out of his pocket. Mr. Edwards' insurance company has paid their maximum proceeds in the sum of $25,000.

Reeves entered the matter of insurance settlements into evidence on two other occasions during the presentation of plaintiff's evidence. On neither occasion did defendant object. Nevertheless, defendant's objection during the opening statement was sufficient to preserve the error for appeal.

In addition, the trial court submitted an instruction to the jury concerning the settlements of Trease and Edwards that read:

The plaintiff has settled his claim against the defendant Jeff Edwards for $25,000, and against the defendant Bret Trease for $25,000. As a result, they have been dismissed from the lawsuit. The defendant known as the Keg has filed bankruptcy and will not have any involvement in this suit.

This information is provided to assist you in assessing the impact of any damages you might award against the remaining defendant as it relates to the plaintiff's overall entitlement to damages as your deliberations may determine.

■ Because of the concern that knowledge of liability insurance will increase the frequency of favorable plaintiff verdicts and elevate damage awards, Utah Rule of Evidence 411 was adopted. Rule 411 states:

Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

Additionally, in *Robinson v. Hreinson*,[21] we addressed the inadvertent mention of insurance during trial and stated:

[T]he question of insurance is immaterial and should not be injected into the trial; and ... it is the duty of both counsel and the court to guard against it. However, the mere mention of the subject does not necessarily in all instances compel the conclusion that it so prejudices the jury that a fair trial cannot be carried out.[22]

It was error for the court to allow the mention of insurance during the opening argument and during the presentation of direct evidence. Nevertheless, if the error was not prejudicial we will not alter the result of the jury trial. In *Robinson*, we stated that prejudice occurs when "there is a reasonable likelihood that in the absence of the incident there would have been a substantially different result."[23]

Courts are not as particular about the mention of insurance as they once were.[24] It is common knowledge that most persons have some form of automobile insurance;

**21.** 17 Utah 2d 261, 409 P.2d 121 (1965).

**22.** 409 P.2d at 123; *see also Tjas v. Proctor*, 591 P.2d 438, 440 (Utah 1979); *C.R. Owens Trucking Corp. v. Stewart*, 29 Utah 2d 353, 509 P.2d 821, 823 (Utah 1973); *Hill v. Cloward*, 14 Utah 2d 55,

377 P.2d 186, 187 (1962); *Reid v. Owens*, 98 Utah 50, 93 P.2d 680, 684–85 (1939).

**23.** 409 P.2d at 123.

**24.** *Id.*

indeed, the law requires it. Similarly, most businesses have liability insurance. However, the potential for abuse and the likelihood of influencing the jury's decision is so high that the purposeful and intentional mention of insurance is not to be condoned. Neither the fact that they had settled through insurance companies nor the amounts of the settlement were relevant or admissible. Insurance information was not necessary to prove agency, ownership, control, bias, or prejudice.

Nevertheless, the mention of insurance was not likely to have an effect on the outcome in this case. In fact, it is unlikely that the jury would extrapolate the mention of automobile insurance to mean that all defendants carried some kind of insurance. Although the mention of insurance was error, we consider it harmless. However, upon remand, the error should not be perpetuated.

We reverse and remand for further proceedings.

STEWART, J., concurs.

ZIMMERMAN, Justice (concurring):

I concur in parts I, II, and III of the Chief Justice's opinion. I also agree with the substance of part IV.

As for part IV, I agree that the trial court should not have permitted the mention of insurance, and I agree that the error was not harmful. I want only to make an observation about the harmless-error standard quoted by the Chief Justice.

The proper test for determining whether an improper admission of evidence was harmless is set forth in Utah Rule of Evidence 103(a). We have interpreted this standard as being congruent with those set elsewhere in the rules for determining the harmfulness of errors. *State v. Verde*, 770 P.2d 116, 121 (Utah 1989) (equating the standards for harmless error in Utah R.Crim.P. 30(a), Utah R.Civ.P. 61, and Utah R.Evid. 103(a)). Under that standard, "we label 'harmless' ... errors which ... are sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings." *Verde*, 770 P.2d at 120 (citations omitted).

The standard set forth in *Robinson v. Hreinson*, 17 Utah 2d 261, 409 P.2d 121 (1965), quoted by the Chief Justice, predates the promulgation of Utah Rule of Evidence 103(a) and our recent attempts to bring some consistency to our phrasing of the harmless error tests. *E.g., Verde*, 770 P.2d at 120–21; *State v. Knight*, 734 P.2d 913, 919–20 (Utah 1987). I assume that the Chief Justice relies on *Robinson* only because it is a case involving evidence of insurance and because the standard quoted does not differ materially from our post-rule 103(a) articulations. There is certainly nothing in our cases or rules that would suggest that some unique standard applies in insurance policy situations.

HOWE, Associate Chief Justice (concurring and dissenting):

I concur in all of the majority opinion except part III.B. As to that part, I dissent.

The majority correctly observes in part III.A. that our Dramshop Act imposes strict liability and that it is not premised on common law notions of fault or negligence. Accordingly, the majority concludes that "the doctrine of comparative negligence may not be applied among the defendants." However, the majority loses sight of this principle in part III.B. where it requires the negligence of the plaintiff to be compared to the negligence of the intoxicated driver. The majority rejects the almost universally recognized rule that the contributory negligence of a plaintiff who is injured by an intoxicated person is not available as a defense to a tavern owner when sued under a dramshop law. *Overocker v. Retoff*, 93 Ill.App.2d 11, 24, 234 N.E.2d 820, 815 (1968); *Feuerherm v. Ertelt*, 286 N.W.2d 509, 511 (N.D.1979); *Slager v. HWA Corp.*, 435 N.W.2d 349, 352 (Iowa 1989) (relying on *Williams v. Klemesrud*, 197 N.W.2d 614 (Iowa 1972), *overruled on other grounds, Lewis v. State*, 256 N.W.2d 181, 192 (Iowa 1977); *see* Annotation, *Contributory Negligence Allegedly Contributing to Cause of Injury as Defense in Civil*

*Damage Act Proceeding,* 64 A.L.R.3d 849 (1975), and cases collected there; 45 Am. Jur.2d *Intoxicating Liquors* § 591 (1969); 48A C.J.S. *Intoxicating Liquors* § 441 (1981); *see also* W. Keeton, *Prosser & Keeton on the Law of Torts* § 81 (5th ed. 1984).

The cases cited by the majority in footnotes 8 and 15 in support of its position that the negligence of the intoxicated driver and the plaintiff must be compared do not support that position. *Huss v. United States,* 738 F.Supp. 1098 (W.D.Mich.1990), was not a suit against a tavern owner under a dramshop statute. It was an action for personal injuries under the Federal Tort Claim Act against the United States growing out of an automobile accident with a National Guard vehicle. The two Michigan cases cited, *Heyler v. Dixon,* 160 Mich. App. 130, 153–54, 408 N.W.2d 121, 130–31 (1987), and *Lyman v. Bavar Co.,* 136 Mich. App. 407, 408–9, 356 N.W.2d 28, 30 (1984), are distinguishable because the Michigan Dramshop Act contains an express provision that "all factual defenses open to the alleged intoxicated person or minor shall be open and available to the principal and surety." Mich.Comp.Laws Ann. § 436.22. The Michigan courts have construed this statutory provision to require the comparison of the negligence of the plaintiff and the intoxicated person. Utah has no such provision.

The two decisions from the Illinois Court of Appeals in the 1940s do not represent the present law in that state. *Klopp v. Protective Order of Elks,* 309 Ill.App. 145, 33 N.E.2d 161 (1941); *Hill v. Alexander,* 321 Ill.App. 406, 53 N.E.2d 307 (1944). In neither case was the issue presented for decision. There is dicta in the opinions that the negligence of a plaintiff must be considered. However, the later case of *Quatrano v. Marrocco,* 61 Ill.App.2d 1, 14–15, 208 N.E.2d 632, 638–39 (1965), specifically disavowed this language. Moreover, the Supreme Court of Illinois in *Howlett v. Doglio,* 402 Ill. 311, 319, 83 N.E.2d 708, 713 (1949), clearly held that under its dramshop act, contributory negligence of a plaintiff was not a bar to an action for damage.

The remaining case relied upon by the majority opinion is *Walz v. City of Hudson,* 327 N.W.2d 120 (S.D.1982). That case was not brought under a dramshop statute since South Dakota had none. Instead, the supreme court held that because a statute of that state made it a crime to sell intoxicating beverages to a person who is already intoxicated, the violation of that statute was negligence as a matter of law. The court therefore recognized a civil cause of action in negligence and accordingly allowed the usual defenses to negligence actions to be interposed, including the negligence of the plaintiff. *Id.* at 122–23. Following that decision, the legislature of South Dakota abrogated the rule of that case. S.D. Codified Laws Ann. § 35–11–1.

The reason given in the cases for not allowing the contributory negligence of a plaintiff to be a defense is that dramshop statutes impose either strict liability or a distinct statutory liability, to which common law principles of negligence do not apply. The majority mistakenly reads our statute as though it made the tavern owner liable for the negligence of the intoxicated customer. Not so. Our statute makes the tavern owner liable for injuries "resulting from the intoxication." § 32A–14–1(1)(d). No mention is made of negligence. We should follow cases from those states such as Iowa which have had dramshop statutes for over 100 years, and refuse to engraft negligence defenses onto a strict liability statute. *See, e.g., Slager v. HWA Corp.,* 435 N.W.2d 349. A defense which is recognized by the cases against an injured plaintiff is complicity, viz., when the plaintiff has actively participated in furnishing drinks to the intoxicated person. *See* Annotation, *Third Person's Participating in or Encouraging Drinking as Barring Him From Recovery Under Civil Damage or Similar Acts,* 26 A.L.R.3d 1112 (1969). That fact situation is not present in the instant case.

The majority confuses negligence with proximate cause. The statute makes the tavern owner liable for injury "resulting from intoxication." This required a finding that the intoxication of the driver in the instant case was a proximate cause of the

plaintiff's injuries. The trial court so instructed the jury, and the jury found that the plaintiff's injuries did "result from" Trease's intoxication at the defendant's tavern. I, therefore, dissent from the following statement in the majority opinion: "Causation can only be determined by considering the negligence or fault of those involved in the incident."

To the contrary, the comparison of negligence in a true negligence action is for the purpose of determining degree of fault of the various actors. It is not to determine causation. An intoxicated driver may share only part of the fault for an accident, but his negligence or fault may, indeed, be a proximate cause of the accident, i.e., the plaintiff's injuries "resulted from" the intoxication.

In summary, the position taken by the majority on this issue has little or no support in the cases. On the other hand, recent decisions in states where comparative negligence statutes have been enacted in recent years have revisited the issue and have refused to apply them to dramshop actions. *See Slager v. HWA Corp.*, 435 N.W.2d 349; *Feuerherm v. Ertelt*, 286 N.W.2d 509. Since this is our first case arising under our dramshop law, it is important that we not start down a course of engrafting common law defenses onto a strict liability statute.

I would affirm the judgment.

DURHAM, J., concurs in the concurring and dissenting opinion of Associate C.J. HOWE.